**Kenneth E. GREER and Wife, Virginia Greer, Appellants,**

v.

**Martin DAVIS, Appellee.**

No. 13–94–430–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 29, 1996.

Rehearing Overruled April 18, 1996.

Ken Dahlberg, Law Offices of Ken Dahlberg, Corpus Christi, for Appellants.

Vaughan Waters, Roland L. Leon, Thornton, Summers, Biechlin, Dunham & Brown, Corpus Christi, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellants, Kenneth and Virginia Greer ("Greer"), filed suit alleging that Martin Davis, a base runner in a municipally-sponsored softball game, negligently, or alternatively, recklessly and intentionally collided with Kenneth Greer, a player making a tag at home plate. The trial court granted summary judgment in favor of Davis and appellants appeal by a single point of error. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants contend that while Kenneth Greer was attempting to tag Davis on his way from third base, Davis lowered his head and shoulders and deliberately collided with Greer in order to make Greer drop the ball, instead of attempting to slide into base or step aside to avoid the tag. The collision allegedly caused appellants physical and emotional injuries and resulted in this cause of action for negligence and assault.

Davis moved for summary judgment on the grounds that (1) his mere negligence or even gross negligence, if any, was not sufficient to impose liability because he and Greer were voluntary participants in a contact sports event; (2) he did not act intentionally or recklessly as required by Texas law in a cause of action arising from injuries sustained in a competitive contact sport; and (3) Greer, as a voluntary participant in the softball game, assumed the risk that he would be struck in a collision such as occurred in this instance. Appellants responded with a controverting affidavit which solely challenged Davis' position that he did not act "intentionally and recklessly." The trial court, without specifying the grounds for its ruling, granted Davis' motion for summary judgment and entered judgment that appellants take nothing from Davis. Appellants now appeal by a single point of error challenging the granting of summary judgment.

## SUMMARY JUDGMENT

A summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). The standard for reviewing a motion for summary judgment includes three elements:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to a judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists for the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 166–67 (Tex.1987). This may be accomplished by defendant's summary judgment evidence showing that at least one element of a plaintiff's cause of action has been conclusively established against the plaintiff, *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 106–07 (Tex. 1984); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970), or that an affirmative defense is established as a matter of law. *Munoz v. Gulf Oil Co.,* 693 S.W.2d 372, 373 (Tex.1984) (*citing City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)).

Davis was required to prove that no genuine issue of fact existed as to an essential element of appellants' negligence and assault claims, or conclusively establish his assumption of the risk defense.

### a. The Negligence Claim

In his motion for summary judgment, Davis argued that in an action involving injuries sustained by voluntary participants during the normal course of a contact sports event, mere negligence on the part of the defendant is not sufficient to impose liability. *Connell v. Payne,* 814 S.W.2d 486, 489 (Tex. App.—Dallas 1991, writ denied). Appellants failed to address this issue in their response to the motion for summary judgment and did not present the issue to us in this appeal. The negligence issue is therefore not before us for review. *See Clear Creek Basin Auth.,* 589 S.W.2d at 678–79; *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 621 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

### b. The Assault Claim

█ In order to prevail in a cause of action for injuries sustained while participating in a competitive contact sport, a claimant must prove that the defendant acted intentionally or with reckless disregard of the rights and welfare of the claimant. *Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614, 616–17 (Tex.App.—Amarillo 1993, no writ); *Connell,* 814 S.W.2d at 489. Davis sought to establish that no genuine issue of material fact existed as to his intent by offering his sworn affidavit and the deposition testimony of Amel G. Sahadi, who served as the home plate umpire during the game. Davis' affidavit states, in relevant part, as follows:

As I approached home plate KENNETH E. GREER positioned himself directly in the third base/home plate baseline, facing directly toward me.... He caught the ball as it was thrown to him, but at that point there was no time for me to think or react in any manner. I believe that I raised my right arm reflexively, and I collided shoulder-to-shoulder with KENNETH E. GREER. The collision occurred about six to eight feet up the baseline away from home plate.

. . . .

At the time of this collision I had absolutely no intention of causing any harm or injury to KENNETH E. GREER, nor had I any reason to wish to do so. As of the moment he caught the ball there was no time for me to make any conscious decision as to how to react—whether to slide, whether to step outside the baseline, or whether to continue running.

Mr. Sahadi testified that "[T]here was no slide here, but, . . . it all happened so fast. I didn't see the man coming up with the intent to hurt, you know. I just didn't see it like that. Because if I had of, I would have thrown him out of the ball game." [1]

█ Appellants offered Kenneth Greer's controverting affidavit which states, in relevant part, as follows:

I received the throw . . . in time for any base-runner to see that I had it (if he were looking at home) and either slide or avoid me. I was about two feet in front of the plate, according to umpire Sahadi, and was in a crouched position to make the tag on DAVIS' expected slide.

Instead and unexpectedly, DAVIS lowered his shoulder and ran over me.... DAVIS did have time to run to the right of me or could have attempted a slide....

In his previous at-bat, DAVIS hit the ball directly back at me, narrowly missing my head. After he scored and went back to the dugout, I heard him tell teammates, "I was aiming right at the son of a bitch."

Months earlier, DAVIS and I were competitors in a church league basketball game. I fouled him as he was on a breakaway lay-up causing him to fall to the floor. He threw the ball at me when he got up.

Appellants also offered the deposition testimony of Roel Canales, the outfield umpire on the day of the incident. Mr. Canales testified that if Mr. Sahadi had asked him for help in making the call on the collision, he would have ejected Davis from the game for intentionally running over Greer.

---

1. The American Softball Association Rules provide that "a runner is out . . . when a defensive player has the ball and the runner remains on his feet and deliberately, with great force, crashes into the defensive player . . . Note: If the act is determined to be flagrant, the offender shall be ejected."

Affidavits filed by a nonmovant in opposition to summary judgment should be accepted as true, and every reasonable inference should be drawn in the nonmovant's favor. *See University of Tex. Health Science Ctr. v. Big Train Carpet,* 739 S.W.2d 792 (Tex.1987); *Nixon,* 690 S.W.2d at 548–49. While appellants' statements do not conclusively establish their assault claim, the proof in this instance need only be sufficient to raise a fact issue with regard to Davis' intent; the evidence need not be sufficient to meet the burden of persuasion that appellants would have at trial. *See Cloys v. Turbin,* 608 S.W.2d 697, 700 (Tex.Civ.App.—Dallas 1980, no writ). Furthermore, questions of intent are questions of fact for the jury to resolve. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986); *Schindler v. Austwell Farmers Co-op,* 829 S.W.2d 283, 287 (Tex. App.—Corpus Christi 1992), *aff'd as modified,* 841 S.W.2d 853 (Tex.1992).

"[E]ven a dog distinguishes between being stumbled over and being kicked." OLIVER W. HOLMES, JR., THE COMMON LAW (1881). This distinction is before us now and we find that a fact question has been raised as to whether the collision was purely accidental or the result of Davis' intentional or reckless conduct, as appellants so doggedly insist.

#### c.  The Assumption of the Risk Defense

As authority for his position that Greer assumed the risk that he would be struck in a collision with another player, Davis refers us to *Connell,* which states in dicta that "by participating in a dangerous contact sport ..., a person assumes the risk of injury." *Connell,* 814 S.W.2d at 488. However, the court in *Connell* restricted its prior statement by clarifying that the "risk involved in competing in contact sports is the basis for the historical reluctance of courts to allow players to recover damages for injuries received while participating in a competitive contact sport *unless* one participant deliberately injures another." *Id.* Thus, the court did not recognize the "assumption of the risk" defense and neither do we.

■ Traditionally, courts have barred recovery for damages resulting from injuries occurring in an athletic competition under the theory that the participants voluntarily assumed the risk of dangers inherent in that activity. *See, e.g., Gaspard v. Grain Dealers Mutual Insurance Co.,* 131 So.2d 831, 834 (La.Ct.App.1961). More recently, however, courts have held that participants in athletic competition owe a legal duty not to injure another participant by conduct that is either deliberate, willful, or recklessly disregards the safety of the other participant. *See Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258, 261 (1975). Although a participant in a game or sport assumes the risk of all of the dangers incidental to that particular activity which are obvious and foreseeable, he does not assume the risk of injury from fellow players acting in an unreasonable or unsportsmanlike manner with a reckless lack of concern for the safety of others participating. *Bourque v. Duplechin,* 331 So.2d 40, 42 (La.Ct.App.1976). Recognizing the trend among state courts to allow injured athletes to recover for injuries sustained on the field, the federal court of appeals, in a Colorado case involving a professional football player who recklessly struck an opposing player in the back of the head, held that even on a football field all reason has not been abandoned. *See Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 521 (10th Cir.1979).

■ In Texas, the supreme court abolished *voluntary* assumption of the risk as a defense to actions based on negligence, except in "cases in which there is a knowing and express oral or written consent to the dangerous activity or condition." *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 758 (Tex. 1975). Thus, even if appellants' negligence claim was properly before us, we could not recognize the "assumption of the risk" defense to defeat the claim. *Id.*

■ Furthermore, we reject Davis' "assumption of the risk" defense as a bar to appellants' assault claim. Davis contends that he should not be liable for any injuries arising from his participation in an organized contact sport. We hold that a defendant acquires relief from this type of claim, not by way of impunity, but rather by the heightened standard laid out in *Hathaway* and *Connell.* The fact that a claimant must

prove "intentional or reckless" conduct, rather than mere negligence, protects defendants such as Davis from suit for genuinely accidental injuries. Since assumption of the risk is not a complete defense to this type of claim, we conclude that, as a matter of law, Davis' assertion of "assumption of the risk" could not have been the basis for summary judgment.

Having determined that a fact issue exists as to the appellants' allegation of "intentional and reckless" conduct and having ruled out Davis' defense as the basis for summary judgment, we sustain the appellants' point of error. We REVERSE the judgment of the trial court and REMAND the case for a trial on the merits.