TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00548-CV






Frank Matthews, Appellant



v.



Ben Baxter Ingham, IV, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT


NO. C-95-0768-C, HONORABLE DICK ALCALA, JUDGE PRESIDING 






PER CURIAM


 Two horses and their riders collided while competing in a steer-roping contest. The
question presented is whether appellee Ingham could have any liability for the injuries sustained by appellant
Matthews. The trial court granted summary judgment in favor of Ingham, the defendant in the trial court. (1) 
We will reverse the trial-court judgment and remand the cause.


Background



 Matthews and Ingham were competing in a team steer-roping event. Ingham and his
partner had roped before Matthews and his partner's scheduled run. Ingham, still on his horse, remained
in the arena to register a protest after his run. The steer that Matthews and his partner were to rope was
released before Ingham cleared the arena. Matthews and Ingham collided as Matthews rode out of the
chute to pursue his steer, resulting in injuries to Matthews.

 Matthews' pleadings alleged various acts of negligent and reckless conduct on Ingham's
part. Ingham filed a motion for summary judgment, which the trial court granted. Matthews brings four
points of error, alleging generally that the trial court erred in granting Ingham's motion for summary
judgment. Points of error three and four contend that the trial court erred in granting the motion for
summary judgment because chapter 87 of the Texas Civil Practice and Remedies Code does not apply to
this cause, or, in the alternative, a fact issue exists under this chapter. (2) Ingham's motion for summary
judgment did not present chapter 87 as a ground for summary judgment, the judgment does not reflect
reliance on chapter 87, and Ingham, in his appellate brief, agrees chapter 87 does not apply. Accordingly,
we overrule points three and four.


Sporting-Event Injuries



 In points of error one and two Matthews contends generally that the trial court erred in
granting summary judgment because the evidence raised material fact issues. The movant for summary
judgment has the burden of showing there are no genuine issues of material fact and that he is entitled to
judgment as a mater of law. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take
evidence favorable to the nonmovant as true. Id. We also indulge every reasonable inference in favor of
the nonmovant and resolve doubts in his favor. Id.

 Many cases have discussed whether a participant in a sport can hold another participant
liable for negligent conduct that causes injury or whether the conduct causing injury must be reckless or
intentional. (3) Recent Texas cases have applied the "reckless or intentional" standard to sports such as polo,
golf and baseball. Greer v. Davis, 921 S.W.2d 325, 328-29 (Tex. App.--Corpus Christi), writ denied,
940 S.W.2d 582 (Tex. 1996) (baseball); Allen v. Donath, 875 S.W.2d 438, 440 (Tex. App.--Waco
1994, writ denied) (golf); Hathaway v. Tascosa Country Club, Inc., 846 S.W.2d 614, 616-17 (Tex.
App.--Amarillo 1993, no writ) (golf); Connell v. Payne, 814 S.W.2d 486, 488 (Tex. App.--Dallas
1991, writ denied) (polo).

 The Texas Supreme Court criticized the "reckless or intentional" standard because of the
ease with which a plaintiff can demonstrate a fact question as to the defendant's state of mind. Greer, 940
S.W.2d at 582. Instead, it articulated a different standard: "By voluntarily participating in a competitive
sport, a participant is deemed to have consented to and assumed the risk of all harmful contacts and
foreseeable injuries that are inherent to that particular sport." Id. The court said that this standard still
provided a remedy for participants injured because of an abnormal or unforeseeable act to which they did
not consent. Id. at 583. "Utilizing this standard, courts will no longer be required to determine the
subjective state of the participant's mind, but can instead concern themselves with the objective
determination of whether the actions were foreseeable or expected in the course of the particular sporting
event." Id. If a participant can show that the injury resulted from such a foreseeable and expected action,
then that participant should be able to obtain summary disposition. Id.

 We first note that the parties and the trial court did not have the benefit of the final Greer
decision at trial or at the time of submission to this court; therefore, Ingham could not move for summary
judgment on this basis. However, inasmuch as Greer intended to allow a defendant to more easily obtain
summary disposition than under a "reckless or intentional" standard, in the interests of judicial economy,
we will consider whether the summary disposition can survive either standard.

 Our first consideration is whether the roping competition is a sport within the Greer
analysis. The parties do not dispute that it is a sport and we agree. It is not a head-to-head team event
like polo or baseball but does involve people competing against time and each other in an organized fashion. 
Under Greer, the question then becomes whether the injury resulted from an action that was foreseeable
or expected in the course of the particular sporting event or was an abnormal or unforeseeable act. Ingham
was entitled to summary judgment only if he proved the act causing the injury was inherent and foreseeable
as a matter of law. We do not think the record as developed on summary judgment allows us to decide
the question and we must remand for further action in the trial court.

 Both Matthews and Ingham are experienced participants in the sport. Ingham, as movant,
by affidavit testified that it was not unusual for a contestant to remain in the arena after the run and that it
was the responsibility of the incoming team to check the arena and "accept or reject" the arena as they
found it, meaning that if a rider remained in the arena, that was part of the condition of the arena. In other
words, part of the foreseeable risk of steer roping is the obstacle presented by the preceding team. 
Matthews does not dispute Ingham's evidence that it was common for a competitor to remain in the arena. 
However, Matthews, by affidavit and deposition, testified that if Ingham did not promptly exit the arena,
he should have remained in the location where he was when Matthews first entered the chute; Matthews
claimed he did not expect movement on Ingham's part after the incoming team started to move into
position. The central issue is not Ingham's mere presence in the arena--Matthews actually saw and spoke
to Ingham. Rather, the issue is Ingham's behavior in moving from the position he was in when Matthews
and his partner took their positions in the chutes. Matthews testified that it was not unusual for riders to
remain in the arena, but he expected such a rider to remain still and positioned by the flagger who controls
the gate that allows the steer to start the run.

 There was also conflicting evidence about whether specific rules controlled the participants'
behavior, whether these rules were universal or peculiar to each arena and what, if any, rules were in effect
for this event. Rules, of course, help shape the parties' understanding of each participant's expected
behavior, that is, the behavior to which they were giving consent.

On this record, Ingham has not demonstrated as a matter of law that his conduct in the arena was normal
and foreseeable under Greer. In view of our mandate to resolve all evidentiary and inferential conflicts in
favor of the nonmovant, we are constrained to hold that fact issues exist about the expected behavior in
this sport. For that matter, under the circumstances of this sport, there may be no expected behavior and
participants consent to that randomness.

 As noted in Greer, a major barrier against a defendant obtaining summary disposition under
the "reckless or intentional" test is the subjective element of the analysis. (4) For the reasons noted in Greer,
and because of the constraints of summary judgment review, we cannot uphold the summary judgment on
this record under a pre-Greer analysis either. Accordingly, we sustain points of error one and two, reverse
the trial-court judgment, and remand for further proceedings.



Before Justices Powers, Aboussie and Jones


Reversed and Remanded


Filed: December 18, 1997


Do Not Publish
1. Matthews also sued Bly Indoor Arena, Inc., Johnny Van Court and West Texas Boys Ranch. 
These defendants either settled or obtained summary judgment in their favor and are not parties to this
appeal.
2. Tex. Civ. Prac. & Rem. Code Ann. §§ 87.001-.005 (West 1997). This statute, applicable to
causes of action accruing after September 1, 1995, now governs liability for participants in equine activities. 
Act of May 23, 1995, 74th Leg., R.S., ch. 549, §§ 1, 2, 1995 Tex. Gen. Laws 3318, 3318-20. (Note: 
The 1995 legislative session added two different chapters numbered "87" to the Civil Practice and
Remedies Code. The other chapter 87 is titled "Liability for Certain Injuries to Convicted Persons." Act
of May 27, 1995, 74th Leg., R.S., ch. 604, § 1, 1995 Tex. Gen. Laws 3442, 3442-43.)
3. See generally Donald M. Zupanec, Annotation, Liability of Participant in Team Athletic
Competition for Injury or Death of Another Participant, 77 A.L.R.3d 1300-1309 (1977).
4. The court was concerned that the "reckless or intentional" standard is not workable to ferret out
unmeritorious claims, stating: "Fear of litigation will alter the nature of the game if participants in athletic
contests are forced to endure the costly ordeal of a trial every time an injury occurs on the playing field and
the injured player makes an accusation of reckless or intentional conduct." 940 S.W.2d at 583.



seeable act. Ingham
was entitled to summary judgment only if he proved the act causing the injury was inherent and foreseeable
as a matter of law. We do not think the record as developed on summary judgment allows us to decide
the question and we must remand for further action in the trial court.

 Both Matthews and Ingham are experienced participants in the sport. Ingham, as movant,
by affidavit testified that it was not unusual for a contestant to remain in the arena after the run and that it
was the responsibility of the incoming team to check the arena and "accept or reject" the arena as they
found it, meaning that if a rider remained in the arena, that was part of the condition of the arena. In other
words, part of the foreseeable risk of steer roping is the obstacle presented by the preceding team. 
Matthews does not dispute Ingham's evidence that it was common for a competitor to remain in the arena. 
However, Matthews, by affidavit and deposition, testified that if Ingham did not promptly exit the arena,
he should have remained in the location where he was when Matthews first entered the chute; Matthews
claimed he did not expect movement on Ingham's part after the incoming team started to move into
position. The central issue is not Ingham's mere presence in the arena--Matthews actually saw and spoke
to Ingham. Rather, the issue is Ingham's behavior in moving from the position he was in when Matthews
and his partner took their positions in the chutes. Matthews testified that it was not unusual for riders to
remain in the arena, but he expected such a rider to remain still and positioned by the flagger who controls
the gate that allows the steer to start the run.

 There was also conflicting evidence about whether specific rules controlled the participants'
behavior, whether these rules were universal or peculiar to each arena and what, if any, rules were in effect
for this event. Rules, of course, help shape the parties' understanding of each participant's expected
behavior, that is, the behavior to which they were giving consent.

On this record, Ingham has not demonstrated as a matter of law that his conduct in the arena was normal
and foreseeable under Greer. In view of our mandate to resolve all evidentiary and inferential conflicts in
favor of the nonmovant, we are constrained to hold that fact issues exist about the expected behavior in
this sport. For that matter, under the circumstances of this sport, there may be no expected behavior and
participants consent to that randomness.

 As noted in Greer, a major barrier against a defendant obtaining summary disposition under
the "reckless or intentional" test is the subjective element of the analysis. (4) For the reason