NUMBER 13-99-114-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


SOUTHWEST KEY PROGRAM, INC., D/B/A

TEXAS SKY PROGRAM, INC., AND 

LA ESPERANZA HOME FOR BOYS
, Appellant,


v.



CARLO GIL-PEREZ
, Appellee.

___________________________________________________________________


On appeal from the 197th District Court


of Cameron County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Rodriguez



 Appellee, Carlos Gil-Perez, filed suit alleging appellants, Southwest
Key Program, Inc. d/b/a Texas Key Program, Inc., (Southwest Key) and
La Esperanza Home for Boys (the Home),(1) were negligent and
proximately caused his injuries and damages. The case was tried to a
jury that found Southwest Key one hundred percent negligent and
awarded $75,000 in damages, plus interest and costs. The court
entered a final judgment against Southwest Key and the Home.(2) By
three issues, appellants complain (1) the trial court erred in submitting
appellee's case to the jury as ordinary negligence; (2) alternately, the
evidence was factually and legally insufficient to support a negligence
finding; and, (3) the trial court erred in refusing to credit the judgment
against appellants in an amount equal to the medical expenses paid by
appellants. We affirm.

 In June 1994, appellants accepted placement of appellee at the
Home through an agreement with the Texas Youth Commission (TYC). 
In September, Antonio Gracia, an employee of Southwest Key, took
several resident boys, including appellee, to a local stadium to exercise
and participate in recreational activities. Appellants encouraged their
residents to participate in these activities by giving them extra points
which were accumulated for privileges. It is undisputed that Gracia
was responsible for supervising the residents of the Home on this trip,
and that he was acting within the course and scope of his employment
when the incident occurred. While at the stadium, appellee and the
other residents joined non-residents in an informal, impromptu game of
tackle football and appellee suffered a dislocated knee.

 By their first issue, appellants contend that the trial court erred in
submitting appellee's case to the jury as one of ordinary negligence.(3) 
Appellants argue that this is a sports injury case involving a participant
and a non-participant, and urge this Court to adopt the heightened
standard for recovery applicable in cases involving a participant versus
a non-participant. Appellee, however, contends this is not a sports
injury case, but rather a case of negligent supervision of a minor under
appellants' care and control. As such, appellee urges that the standard
is one of ordinary negligence.

 A participant in athletic competition owes a legal duty not to injure
another participant by conduct that either intentionally or recklessly
disregards the safety of the other participant. See Greer v. Davis, 921
S.W.2d 325, 327-28 (Tex. App.--Corpus Christi 1996, writ denied)(to
prevail in cause of action for injuries sustained while participating in
competitive contact sport, plaintiff must prove defendant participant
acted recklessly or intentionally). The conduct of nonparticipants, such
as sponsors and others whose duties extend to instruction,
maintenance of equipment and facilities, and other considerations is
judged by concepts of ordinary negligence. See Moore v. Phi Delta
Theta, 976 S.W.2d 738, 741-42 (Tex. App.--Houston [1st Dist.] 1998,
pet. denied) (competitive contact sports doctrine and heightened
standard does not apply to non-participating sponsor of paint ball "war
game"); Connell v. Payne, 814 S.W.2d 486, 488 (Tex. App.--Dallas
1991, writ denied) (where standard of intentionally or recklessly causing
injury is applied to participant defendant, ordinary negligence is applied
to non-participant polo club).

 In the present case, the evidence reflects this was a recreational,
impromptu football game between children who were residents of the
Home and non-residents. Although the game occurred at an area away
from the Home, the residents were under the care and supervision of an
employee of the Home. Nonetheless, appellants, through their
employees or agents, did not participate in the game. Further, in our
opinion, the action of Gracia in allowing the children to play tackle
football during their recreation time did not, as a matter of law,
constitute appellants' "sponsorship" of the game. Therefore, because
appellants neither participated nor sponsored the football game, we
conclude this is not a sports injury case. Thus, the issue of whether a
heightened standard of recovery requiring reckless or intentional
conduct should be applied is not before us. Appellants' first issue is
overruled.

 By their second issue, appellants contend that, if the ordinary
negligence standard is held to be the appropriate standard, the jury's
finding of negligence is not supported by legally or factually sufficient
evidence. Appellants contend there is no evidence that a duty existed,
that appellants breached any duty, or that appellants proximately
caused appellee's injury. Appellants also contend that the jury's failure
to place any responsibility on appellee is against the great weight and
preponderance of the evidence.

 To sustain a cause of action for negligence, one must show the
existence of some duty owed by one party to another, a breach of that
duty, and damages that were proximately caused by the breach of the
duty. See Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998);
Praesel v. Johnson, 967 S.W.2d 391, 394 (Tex. 1998); El Chico Corp.
v. Poole, 732 S.W.2d 306, 311 (Tex. 1987).

 Appellee contends appellants had a duty to protect him from
physical harm, and are liable to him based on the following theories of
recovery: (1) negligence in failing to provide adequate instruction; (2)
negligence in failing to provide adequate supervision; and (3) negligence
in failing to provide adequate organization of the game, including the
provision of equipment.(4)

 Duty, a question of law, is the threshold inquiry in a negligence
case. See Graff v. Beard, 858 S.W.2d 918, 919 (Tex. 1993); Wal-Mart
Stores, Inc. v. Tamez, 960 S.W.2d 125, 127 (Tex. App.--Corpus Christi
1997, pet. denied). It is the obligation to conform to a particular
standard of conduct. See Valley Shamrock, Inc. v. Vasquez, 995 S.W.2d
302, 306 (Tex. App.--Corpus Christi 1999, no pet.); Castillo v. Sears,
Roebuck & Co., 663 S.W.2d 60, 64 (Tex. App.--San Antonio 1983, writ
ref'd n.r.e.). "The duty of reasonable care required under a given set of
facts may be based on common law principles, or the appropriate
standard of conduct may be determined by statute." See Wal-Mart
Stores, 960 S.W.2d at 128 (citations omitted). The court decides
whether a duty exists from the facts surrounding the occurrence in
question. See id. at 127-28 (citations omitted).

 It is undisputed that appellee was a resident of the Home through
appellants' agreement with the TYC. Appellants are required to comply
with a variety of TYC regulations designed to ensure the safety of
children under their supervision. One such requirement is that each
youth in the TYC system is to be accorded certain basic rights, including
the right to be protected from physical harm. See 37 Tex. Admin. Code
§ 93.1(a), (b) & (j). The TYC General Operating Policy Manual, No.
GOP.61.01, effective March 25, 1994, at page four, provides:

 Discussion [of right to protection from physical harm]: Every
TYC staff member has an affirmative obligation to take every
reasonable precaution to protect youth from harm. This
obligation may take many forms, from ensuring adequate
coverage in the dorm to providing a qualified lifeguard at
pool side. Some youth will suffer injury; that is an inevitable
part of growing up. The agency's obligation is to ensure
that it does nothing which contributes to or causes such
injury.


Thus, the administrative code imposes an affirmative duty on appellants
to protect its residents, including appellee, from physical harm. The
TYC General Operating Policy Manual provides that every member of
the TYC staff has an affirmative obligation to ensure it does nothing
which contributes to or causes such injury, and that the agency has the
obligation to ensure that it does nothing which contributes to or causes
such injury.

 At trial, Gracia acknowledged he was required to comply with the
TYC policies, and appellants stipulated they must comply with TYC
policies and procedures, including the affirmative obligation to take
every reasonable precaution to protect youth from harm. Appellee
argues that this acknowledged duty is one of ordinary care and, as
such, appellants have a common law duty to protect their residents
from physical harm following the above referenced guidelines.

 Common law negligence rests primarily upon the existence of
reason to anticipate injury and the failure to perform the duty arising on
account of that anticipation. See Wal-Mart Stores, 960 S.W.2d at 130
(citations omitted). Therefore, when determining whether a common
law duty exists, the foremost and dominant consideration is
foreseeability and likelihood of the risk. See id. (citations omitted). 
Factors weighing against imposition of a duty are the magnitude of the
burden of guarding against the injury, and the consequences of placing
that burden upon the defendant. Id. 

 A standard of care on the part of appellants already exists toward
their residents who might be injured by unreasonable conduct in
supervising, organizing or instructing recreational activities. This
standard, as expressed above, is set out in the Texas Administrative
Code and discussed in the TYC manual. We see no reason why this
standard of care should not be considered one of ordinary care under
the facts of this case. Accordingly, we conclude that appellants have
a legally cognizable duty: a duty to protect their residents from physical
harm following the above referenced guidelines.

 Having found a duty exists, we next address appellants' complaint
that there is no evidence that appellants breached any duty. When
reviewing a no evidence point of error, we must consider only the
evidence and reasonable inferences tending to support the jury findings. 
See Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 275-76 (Tex.
1995); Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex.
1993). If there is any evidence of probative force to support the finding,
we must overrule the point of error and uphold the jury's finding. See
Southern States Transp., Inc. v. State, 774 S.W.2d 639, 640 (Tex.
1989); Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1984). If more
than a scintilla of evidence supports the jury's finding, a no evidence
challenge fails. See Stafford, 726 S.W.2d at 16.

 In support of the no evidence contention regarding breach of duty,
appellants cite authorities that stand for the proposition that the mere
occurrence of an accident is not evidence of negligence.(5) This
proposition of law is well-founded and is even acknowledged in TYC's
guidelines.(6) Nonetheless, this proposition is not determinative under
the facts of this case.

 Appellants further argue that any person reasonably familiar with
athletics knows that any athlete may become injured despite all best
efforts put forth by others involved in the activity. Appellants contend
there is no evidence from which a jury could reasonably find that the
decision to allow the game to occur, while leaving appellee with the
choice of whether to play, is negligence. Appellants also argue they
cannot ensure that each resident will not suffer some accidental injury
as a result of athletic participation, and that appellee was also aware
that athletic activities entail some foreseeable risk. However, this is an
argument more appropriately made in a sports injury case. See Moore,
976 S.W.2d at 741-42; Greer, 921 S.W.2d at 328-29. Having
concluded this is not a sports injury case, appellants' argument is not,
therefore, persuasive. Furthermore, although appellants may not be
insurers of their residents' safety during recreational activities,
appellants do have a duty to take every reasonable precaution to protect
its youth from harm.

 The record in this case reveals that appellee was under the control
and direct supervision of appellants through their supervisor, Gracia. 
Gracia was responsible for seeing after the residents' safety while they
were at the park and made the decision that the residents could play
tackle football. Appellee testified that Gracia told the residents he
needed to watch each and every one of them, and that several residents
wanted to play, so he said, "Come on. I can't watch you over there. I
can't be watching you and, you know, you've got to come and play." 
Gracia testified that someone suggested, "Hey, let's play football," and
Gracia said, "Sure. Whatever. Why not?" Appellee testified he
had never been trained to play organized football and had never played
tackle football. Gracia believed appellee had experience playing football
because somebody may have told him so, but Gracia had not actually
seen appellee play. Gracia testified he had not given appellee any
instruction in playing football, and, as far as he knew, none of the
residents had received any instructions from the Home about playing
football. Gracia had not seen the residents exercising to strengthen
neck or leg muscles. Additionally, it is undisputed that the residents of
the Home were encouraged to participate in recreational and exercise
activities, and, in fact, received points for participating in such activities. 
The points led to privileges. Appellee testified that, although he did not
know if he would have received fewer points for not participating in the
football game, he could have received fewer.

 These are all factors from which a jury could infer that appellants
failed to exercise due care in protecting appellee from physical harm; in
taking every reasonable precaution to protect appellee from physical
harm. 

 Considering the evidence and reasonable inferences tending to
support the jury's findings, we conclude there is more than a scintilla
of evidence to support the finding of negligence as to appellants duty
to protect appellee from physical harm. Thus, appellants' no evidence
argument regarding breach of duty fails.

 Appellants also argue in their second issue that if they were
negligent, appellee was also negligent for participating in the game.(7) 
When a party with the burden of proof, as with comparative negligence
in this case, complains on appeal from an adverse jury finding, the
appropriate issue is "whether the matter was established as a matter of
law" or "whether the jury's finding was against the great weight and
preponderance of the evidence." See Croucher v. Croucher, 660 S.W.2d
55, 58 (Tex.1983); La Grange v. Nueces County, 989 S.W.2d 96, 99
(Tex. App.--Corpus Christi 1999, pet. denied). In this case, appellants
contend the jury's failure to place any responsibility on appellee is
against the great weight and preponderance of the evidence.

 In reviewing such a challenge, we must first examine the record
to determine if there is some evidence to support the finding; if such is
the case, then we must determine, in light of the entire record, whether
the finding is so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and manifestly
unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In
reviewing great weight issues which complain of a jury's failure to find,
the supreme court has admonished the courts of appeals to be mindful
of the fact that the jury was not convinced by a preponderance of the
evidence. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). 
In such cases, a court of appeals may not reverse simply "because [it]
concludes that the evidence preponderates toward an affirmative
answer." Id. We may only reverse where "the great weight of the
evidence supports an affirmative answer." Id.

 Having examined the record as set out above and being mindful
of the fact that the jury was not convinced by a preponderance of the
evidence that appellee's actions contributed to his injury, we conclude
that there is some evidence to support the jury finding. Further, in light
of the entire record, we conclude that the great preponderance of the
evidence does not support an affirmative answer.

 Finally in issue two, appellants complain there is no evidence that
their failure to provide protective equipment constituted negligence
which proximately caused appellee's injury. Proximate cause consists
of two elements: cause-in-fact and foreseeability. See Doe v. Boys
Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 476 (Tex. 1995). 
Appellants complain only that there is no evidence to support the first
element. "Cause-in-fact" means that a negligent act or omission is a
substantial factor in bringing about the injury and without which no
harm would have been incurred. See Union Pump Co. v. Allbritton, 898
S.W.2d 773, 775 (Tex. 1995). Further, lay testimony is adequate to
prove causation if general experience and common sense will enable a
lay person to determine the causal relationship between the event and
the condition with reasonably probability. See Morgan v.
Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984). Generally, lay
testimony establishing a sequence of events which provides a strong,
logically traceable connection between the event and the condition is
sufficient proof of causation. See id. In such cases, lay testimony can
provide both legally and factually sufficient evidence to prove the causal
relationship. See Blankenship v. Mirick, 984 S.W.2d 771, 775 (Tex.
App.--Waco 1999, pet. denied).

 Appellants contend that appellee's sole liability theory is that
appellants were negligent in failing to provide appellee protective
equipment. However, appellee asserts, and this Court agrees, that he
also proceeded on other theories of liability, including negligence in
supervision, instruction and organization of other aspects of the football
game. Testimony was offered to show that there were reasonable
alternative activities available from which Gracia could have chosen,
such as soccer or touch football. There was also testimony that
showed appellee's lack of experience playing organized tackle football. 
Further, it was emphasized that appellants encouraged their residents
to earn participation points through recreational activities. Appellee
was under appellants' care and supervision. As supervisor for
appellants, Gracia was to use reasonable care to protect the residents
from injury. Specifically, he was to ensure that he did nothing which
contributed to or caused injury. Gracia authorized the game of tackle
football and took responsibility for making that decision. Gracia decided
that the game would be played with the understanding that all tackling
would take place below the waist and full contact would be allowed.

 Appellee testified that the injury occurred during the football game
when he was carrying the ball and was tackled by several players. One
of the players grabbed appellee by his legs. When appellee looked at
his leg, he knew something was wrong and started screaming for help. 
Appellee testified he pushed at his leg to reposition it and it started
getting "real fat," and then began hurting "real bad."

 We conclude that appellants' negligent act of supervising the
residents of the Home and organizing a tackle football game with full
contact below the waist was a substantial factor in bringing about
appellee's injury and without which no harm would have been incurred. 
We hold that under these facts, expert testimony was not required to
prove that the tackle football game authorized by appellants caused
appellee's injuries. The jury could have reasonably inferred that a
prudent supervisor would have adequately supervised, organized and
instructed the residents regarding the game or would have chosen a
more reasonable activity, and that the lack of or inadequate supervision,
organization and/or instruction in the instant case was the proximate
cause of appellee's injury. Having reviewed the record, we conclude
that the evidence is legally sufficient to support the jury's finding as it
relates to proximate cause.

 Accordingly, having considered and rejected each of appellants'
attacks on the evidence supporting the jury's findings, issue number
two is overruled.

 Finally, by their third issue, appellants contend that even if there
is some evidence to support a negligence theory, appellants were
entitled to an offset for amounts it had previously paid for appellee's
medical care. However, our review of the record reveals no evidence to
support appellants' argument that they paid appellee's medical bills and
are entitled to an offset. Furthermore, parents possess a cause of action
to recover medical expenses incurred by their minor children. See Sax
v. Votteler, 648 S.W.2d 661, 666 (Tex. 1983). Because appellee's
medical bills arising from his knee injury accrued while he was a minor,
they were the legal responsibility of his mother, Christina Perez. A take-nothing judgment was entered against Perez; thus, she did not receive
an award for medical expenses in this case. Therefore, appellants are
not entitled to an offset of an amount that was never awarded. 
Appellants' third issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this the 9th day of November, 2000.

 

1. Southwest Key Program, Inc., d/b/a Texas Key Program, Inc.,
owns and operates La Esperanza Home for Boys in Brownsville, Texas,
where Gil-Perez was a resident.
2. Christina Perez, appellee's natural mother and plaintiff below, is
not a party to this appeal. The jury found no past medical expenses,
and the court entered a take nothing judgment as to Christina Perez.
3. The court submitted the following liability question to the jury: 
"Did the negligence, if any, of the persons named below proximately
cause the injury in question?" The jury answered "Yes" to
"SOUTHWEST KEY PROGRAM, INC. d/b/a/ TEXAS KEY PROGRAM, INC.,
its employees, agents or servants," and "No" to "CARLOS GIL[-]PEREZ."
4. We note that while appellants contend they had no duty to
provide equipment for the football game, they do not argue that they
had no duty to protect appellee, a resident of the Home, from physical
injury by providing him with adequate supervision, instruction, or
organization of other aspects of the football game.
5. See H.E.B. Grocery Co. v. Godawa, 763 S.W.2d 27, 30 (Tex. App.--Corpus Christi 1988, no writ) (slip and fall in grocery store). See also
Thoreson v. Thompson, 431 S.W.2d 341, 344 (Tex. 1985) (wheat crop
destroyed by fire when truck driven into dry wheat); Wells v. Texas Coal
& Oil Co., 164 S.W.2d 660, 662 (Tex. Comm'n App. 1942, opinion
adopted) (automobile accident); Molina v. Payless Foods, Inc., 615
S.W.2d 944, 947 (Tex. Civ. App.--Houston [1st Dist.] 1981, no writ)
(railing tipped over and injured child's hand); Southwestern Bell Tel. Co.
v. McKinney, 699 S.W.2d 629, 634 (Tex. App.--San Antonio 1985, writ
ref'd n.r.e.) (accident involving overhead telephone line); West v.
Slaughter, 384 S.W.2d 185, 188 (Tex. Civ. App.--Waco 1964, writ ref'd
n.r.e.) (plane destroyed by fire).
6. The TYC operating manual sets out that "[s]ome youth will suffer
injury; that is an inevitable part of growing up." However, the manual
adds that "[appellants'] obligation is to ensure that [they do] nothing
which contributes to or causes such injury."
7. In response to question number 1, the jury attributed no
negligence to appellee. It found Southwest Key, its employees, agents
or servants one hundred percent responsible.