■ ANNE M. CAPATI, Deceased, by DOUGLAS HANSON, Individually and as Administrator of Her Estate, et al., Respondents, v CRUNCH FITNESS INTERNATIONAL, INC., et al., Defendants, and SPORTPHARMA USA, INC., Appellant. [743 NYS2d 474] —Order, Supreme Court, New York County (Edward Lehner, J.), entered August 20, 2001, which granted plaintiff's motion to quash defendant-appellant's subpoenas to take the depositions of three nonparty treating physicians, reversed, on the law, without costs, and the motion denied.

Defendant-appellant manufactures a dietary supplement that plaintiff's decedent allegedly had been taking at the time of her sudden death, which plaintiff attributes in part to one of the supplement's ingredients. No autopsy was performed, and the cause of death is not established by the records of decedent's medical treatment or by her death certificate. Under these circumstances, the subpoenas defendant-appellant issued for the depositions of three nonparty physicians who treated plaintiff's decedent should not have been quashed, since the testimony of these physicians is "material and necessary in the prosecution or defense" of this action, and may furnish information not available from the medical records (*see*, CPLR 3101 [a]; *Schroder v Consolidated Edison Co.*, 249 AD2d 69). Concur—Nardelli, J.P., Sullivan and Friedman, JJ.

Tom and Rubin, JJ., dissent in a memorandum by Tom, J., as follows: In 1997, decedent, having been diagnosed with hypertension, had started working out in a gym operated by defendant Crunch Fitness International, under the auspices of a personal trainer, defendant August Casseus, who allegedly urged her to take various dietary supplements. One of those supplements, manufactured by defendant SportPharma, allegedly contained ephedra. On October 1, 1998, decedent, in her 30s, collapsed while at the gym, was transported to the hospital and was then diagnosed with a brain hemorrhage. She never regained consciousness, but died 14 hours later. Dr. Blecker was the emergency room physician who admitted her, after which she was transferred to the intensive care unit, where she was treated by Dr. Carpati, who was assisted by resident Dr. Lee Vaughn. Dr. Vaughn pronounced her dead. Dr. Reyes, in drafting the death certificate, listed her death as resulting from natural causes. Some 62 pages of medical records were generated, all of which have been provided to plaintiff. Dr. Carpati has been deposed by SportPharma.

SportPharma has now subpoenaed for depositions Drs. Blecker, Vaughn and Reyes. Plaintiff moved to quash, arguing the absence of materiality and necessity and also urging that

the scheduling of depositions would only serve to delay resolution of the claims and unduly burden the plaintiff. The motion court quashed the subpoenas. The court noted that the proposed questioning basically involved soliciting medical opinions regarding the physicians' diagnosis or treatment of an unconscious and soon-to-be deceased person, and hence is not material, and not permissible under the standard set in *Schroder v Consolidated Edison Co. of N.Y.* (249 AD2d 69).

Two procedural factors are important to consider: these physicians are not parties, and are not even going to be called as witnesses by plaintiff. CPLR 3101 (a) provides that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action * * *." SportPharma has failed to set forth any reason to show that these physicians would have anything to add regarding plaintiff's decedent's condition or treatment that is not already in the medical records in defendant's possession. This has all the hallmarks of the proverbial fishing expedition. SportPharma's argument that the records are inadequate because they consist of only 62 pages is not persuasive in light of the short time between decedent's admission and her death. SportPharma then states in conclusory fashion that the records are substantially illegible. However, it does not present any instances of such illegibility that would require the doctors to be deposed. Moreover, the physicians have also agreed to transcribe any records that seem unclear, though apparently no such request has been made. Defendant has failed to demonstrate that the records are unclear or incomplete.

Further, SportPharma's demand to depose the three doctors seems connected, in part, to plaintiff's deposition testimony that he had not requested an autopsy in part because Dr. Carpati had stated that ephedra had likely caused the death and that the autopsy would only demonstrate such. Parenthetically, Dr. Carpati, at his deposition, did not recall having made the statement, and stated that he did not know the cause of death. In light of Dr. Carpati's testimony, SportPharma now speculates that maybe one of the other physicians may have made the statement to plaintiff. The deposition testimony of plaintiff was clearly that Dr. Carpati made this statement. Moreover, plaintiff's testimony regarding the statement is inadmissible hearsay. Whether a doctor other than Dr. Carpati made it thus appears to be irrelevant.

SportPharma already has all material and necessary medical evidence—that provided in the medical records. Inasmuch as determination of what constitutes material and necessary

evidence is vested in the sound discretion of the motion court, notwithstanding our own power to substitute our discretion (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740), I am particularly reluctant under the circumstances of this case to disturb that exercise of discretion.

Accordingly, I would affirm.