OPINION OF THE COURT
Charles J. Markey, J.
The issue tested in this case is the extent to which the assumption of risk doctrine will insulate a defendant from li *461 ability where a plaintiff has paid for and is enrolled for instruction in a particular sport. Significantly, this case involves the doctrine of “secondary assumption of risk” — a doctrine that has never been discussed by name or analyzed in any reported New York State case.
Mila Livshitz is a 52-year-old real estate broker. Livshitz enjoyed playing tennis and did so sporadically over 20 years, primarily during the summer months.
Five years ago, she enrolled in several tennis instruction programs organized by defendant United States Tennis Association National Tennis Center (USTA) at the famed tennis facility in Flushing Meadow Park in Queens County. On the night of July 13, 1998, during one of these paid instructional sessions, she participated in a tennis drill with the other 8 to 10 students in her class. In this drill, the students were in one line, and the instructor hit balls into the court. Each student, in turn, would run into the court and participate in two volleys with the instructor, and then go back to the line, awaiting his or her next turn.
This court has read and reread Livshitz’s entire deposition testimony, and the emerging facts are still sketchy as to the positioning of the instructor and plaintiff at the moment of impact. The facts that can be gleaned are that the student in front of Livshitz had finished his turn, Livshitz was not prepared for the instructor’s serve, and she caught the tennis ball in her left eye. Livshitz, at her examination before trial, testified that she did not even see the ball coming at her. She stated: “I didn’t see it. I felt it.” (Deposition testimony of plaintiff at 63.)
This case, as presented, does not involve any purported written release.
USTA moves for summary judgment dismissing the complaint. The deposition of plaintiff was held on July 19, 2001. The defendant has yet to be deposed.
The heart of USTA’s summary judgment motion is the assumption of risk doctrine. In the nationally seminal case on the subject, Murphy v Steeplechase Amusement Co. (250 NY 479 [1929]), the plaintiff sustained a fractured kneecap while standing on a Coney Island amusement attraction called “the Flopper,” a moving belt. In describing the facts for the majority of the Court of Appeals, reversing a judgment for the plaintiff, Chief Judge Cardozo noted: “A fall was foreseen as one of the risks of the adventure. There would have been no point to the *462 whole thing, no adventure about it, if the risk had not been there.” (Id. at 481.)
Chief Judge Cardozo analyzed:
“Volenti non fit injuria.[1] One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball” (250 NY at 482).[2]
Since the Murphy decision, the law has evolved. By statute, in 1975, the Legislature in New York adopted a regime of comparative fault or comparative causation (CPLR art 14-A). Accordingly, distinctions in concepts between “primary assumption of risk” and “secondary assumption of risk” have emerged. A thorough, excellent exposition of these doctrines, supported by case illustrations, is made by sports law commentator and practitioner Alexander J. Drago, Esq., of Bleakley Platt & Schmidt, LLP, in his article Assumption of Risk: An Age-Old Defense Still Viable in Sports and Recreation Cases (12 Fordham Intell Prop Media & Ent LJ 583 [Winter 2002] [hereinafter cited as Drago, Age-Old Defense], reprinted in 51 Defense LJ 471 [2002]), and by Professor Kenneth W. Simons, Professor of Law at Boston University School of Law and recognized scholar of torts and constitutional law, in Reflections on Assumption of Risk (50 UCLA L Rev 481 [2002] [hereinafter cited as Prof. Simons, Reflections]; see also, John M. Shields, Owners’ Liability: Assumption of Risk and Recreational Use Immunity, NYLJ, Dec. 13, 2000, at 5, col 2 [hereinafter cited as Shields, Owners’ Liability]', Alexander J. Drago, Assumption of Risk in the Arena, On the Field and in the Mosh Pit: What Protection Does It Afford?, 13 Ent & Sports Law 3 [Summer 1995]; Annotation, Effect of Adoption of Comparative Negligence Rules on Assumption of Risk, 16 ALR4th 700, § 5 [1982]).
*463 Under primary assumption of risk, a defendant owes no duty to plaintiff, as a matter of law, because the risks of some activities are so inherent that they cannot be eliminated. “The doctrine rests on the fiction that a plaintiff has tacitly consented to the risk, thereby relieving the defendant of any duty” (Drago, Age-Old Defense, 12 Fordham Intell Prop Media & Ent LJ at 606). Professor Simons explains “[b]ecause participants in the activity are sufficiently aware of the magnitude and nature of the risks * * * but, nevertheless find the activity enjoyable notwithstanding,” the defendant is treated as having breached no duty to the plaintiff (Prof. Simons, Reflections, 50 UCLA L Rev at 500-501).
Where primary assumption of risk applies, because there is no duty owed to the plaintiff, the injuries sustained are not even actionable, and the defendant is entitled to a complete defense and not merely a comparative fault assessment (see, Wheeler v Couret, 182 F Supp 2d 330, 337-338 [SD NY 2001]).
Under secondary assumption of risk, on the other hand, the defendant does owe a duty to the plaintiff, and factual questions concerning the plaintiffs appreciation of the dangers and acquiescence in the risks are reserved for determination by the trier of fact (Drago, Age-Old Defense, at 606, supra). As stated by the Supreme Court of California in its leading, well-regarded opinion in Knight v Jewett (3 Cal 4th 296, 834 P2d 696 [1992]):
“In cases involving ‘secondary assumption of risk’— where the defendant does owe a duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant’s breach of duty — the doctrine is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibilities of the parties.” (Id., 3 Cal 4th at 315, 834 P2d at 707-708.)
In Knight, the California Supreme Court reasoned why cases involving secondary assumption of risk are actionable. The court stated:
“It may be accurate to suggest that an individual who voluntarily engages in a potentially dangerous activity or sport ‘consents to’ or ‘agrees to assume’ the risks inherent in the activity or the sport itself, such as the risk posed to a snow skier by moguls on a ski slope or the risks posed to a water skier by wind-whipped waves on a lake. But it is thoroughly unrealistic to suggest that, by engaging in a *464 potentially dangerous activity or sport, an individual consents to (or agrees to excuse) a breach of duty by others that increases the risks inevitably posed by the activity or sport itself, even where the participating individual is aware of the possibility that such misconduct may occur. * * *
“Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport. Thus, although a ski resort has no duty to remove moguls from a ski run, it clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm. The cases establish that the latter type of risk, posed by a ski resort’s negligence, clearly is not a risk (inherent in the sport) that is assumed by a participant” (3 Cal 4th at 311, 315, 834 P2d at 705, 708 [parenthetical in original; citation omitted]).[3]
Secondary assumption of risk rests upon principles of comparative negligence. The trier of fact, under secondary assumption of risk, reduces the plaintiff’s recovery by the percentage determined to relate to his or her own culpable conduct (Drago, Age-Old Defense, 12 Fordham Intell Prop Media & Ent LJ at 604-605, 607, supra; Shields, Owners’ Liability, supra).
As stated at the outset of this opinion, no New York reported decision has referred to “secondary assumption of risk” (see generally, Lura Hess, Note, Sports and the Assumption of Risk Doctrine in New York, 76 St. John’s L Rev 457 [2002]).
However, recently, the Appellate Division, Second Department, in essence, recognized secondary assumption of risk, without referring by name to the doctrine. In Bennett v City of *465 New York (303 AD2d 614 [2003]), the 13-year-old plaintiff sustained an injury when she slipped on the ground-level horizontal support bar of a hurdle over which she was attempting to jump. The Second Department, in directing a new trial, stated:
“In light of all of the circumstances of this case, including the infant plaintiff’s age, her level of experience, and the [defendant’s] alleged failure to furnish her with adequate instructions, we do not agree with [defendant’s] argument that the doctrine of assumption of the risk presents a complete bar to recovery” (303 AD2d at 615).[4]
With this distinction in mind between primary and secondary assumption of risk, a review of several New York tennis cases serve as profitable comparisons. In Wertheim v United States Tennis Assn. (150 AD2d 157 [1st Dept 1989], lv denied 74 NY2d 613 [1989]), a tennis umpire was hit by a ball served by a top-ranked player in the United States Tennis Open in Flushing Meadow Park, New York, in 1983. Upon being struck, the umpire fell down, struck his head, and died. As a matter of law, the Court held that the assumption of risk doctrine barred the suit and, accordingly, dismissed the complaint. The Court stated: “[T]he decedent was fully aware of the risk of being hit by a ball traveling at a rate of speed in excess of 120 miles per hour” (150 AD2d at 158). Wertheim is an example of primary assumption of risk.
In Siegel v City of New York, decided together with three other cases under Morgan v State of New York (90 NY2d 471 [1997]), the injured plaintiff, while playing tennis, snagged his foot in the net’s torn hem. Although the plaintiff had known of the net’s tear for two years prior to playing (id. at 482), the Court of Appeals held, as a matter of law, that an allegedly damaged or dangerous net or any other defective safety feature is not an inherent risk of a sport. Indeed, the torn net may qualify as “a negligent condition occurring in the ordinary course of any property’s maintenance and may implicate typical comparative negligence principles” (id. at 488). The Court of Appeals thus held that the defense motion for summary *466 judgment should have been denied and reinstated the complaint. In effect, the Court of Appeals’ statement accords with secondary assumption of risk.
Unlike the torn net in Siegel, in Vecchione v Middle Country Cent. School Dist. (300 AD2d 471 [2d Dept 2002]), a high school tennis player who slipped and fell during drills conducted on a wet tennis court was said to have assumed the risk of such activity, and the appellate court ordered that the summary judgment motion be granted and the complaint be dismissed. Vecchione exemplifies primary assumption of risk.
The most evident example of a primary assumption of risk is found in Schneider v Levittown Union Free School Dist. (303 AD2d 394 [2d Dept 2003]), where high school students decided to play “a game of war,” using a tennis ball. The object of the “game” was to hit someone on the opposing team with a tennis ball. During the game, the tennis ball hit the plaintiff in his left eye. In ordering that the summáry judgment motion be granted and the complaint dismissed, the appellate court stated: “The ultimate purpose of the game was to hit the other players with the balls, and the risk of being hit anywhere on the body was inherent in the game and was within the risk assumed” (303 AD2d at 395).
The foregoing cases serve as a useful backdrop, but they do not address a critical fact contained in the case at bar. As a general rule, if a garden variety plaintiff such as Livshitz were hit in the eye during a game of tennis, the doctrine of primary assumption of risk would most likely bar her suit, absent special facts. Here, however, the critical fact is that Livshitz was not simply a participant in an active tennis game; instead, she paid money in order to receive special tennis instruction and was participating in a particular drill. Her conduct did invite a risk of injury in the lobbying of the ball, depending on the alleged level of the class (not altogether clear from the present record). Her enrollment did not invite the instructor to launch a ballistic missile at her, at intense speed (as is alleged), if the instructor saw or had reasonable reason to know that plaintiff was daydreaming, distracted, or otherwise unaware that a projectile was coming at her.
A gym or athletic facility should not be permitted to evade a responsibility by invoking a generalized “assumption of risk” doctrine as though it were some sort of amulet that confers automatic immunity. The doctrine of secondary assumption of risk should be available so as to make sure that a defendant cannot exculpate itself in motion practice by sheer resort to *467 primary assumption of risk. Similarly, primary assumption of risk should not be available to a defendant when one of its instructors slams a ball at terrific velocity knowing, or having reason to know, that the intended student-recipient is unsuspecting or unaware of the traveling projectile. In any case, at the very least, such alleged negligence presents an issue of fact to be considered under secondary assumption of risk.
The factor that Livshitz was paying for specialized instruction cannot be ignored and thus makes reference to the line of cases involving personal trainers at a gym particularly apt (see, e.g., Capati v Crunch Fitness Intl., 295 AD2d 181 [1st Dept 2002] [personal trainer advised decedent to take dietary supplements allegedly containing ephedra]; Corrigan v Muscle-makers Inc., 258 AD2d 861 [3d Dept 1999] [affirming denial of defense summary motion]; accord, Mathis v New York Health Club, 288 AD2d 56 [1st Dept 2001], lv denied 98 NY2d 610 [2002]; but see, Feeney v Manhattan Sports Club, 227 AD2d 293, 294 [1st Dept 1996] [summary judgment granted where personal trainer advised client who had undergone reconstructive shoulder surgery that he “would have no problem” using free weights]).
This court makes no determination of the facts that must await a trial. A review of the Russian-speaking plaintiffs deposition transcript does not clearly convey all the surrounding circumstances. The court, however, on a motion for summary judgment, must accept as true the facts as pleaded by the plaintiff opponent, in his or her complaint or pleadings, that are not contradicted by documentary evidence (see, Maas v Cornell Univ., 94 NY2d 87, 91 [1999]). The primary assumption of risk doctrine is still viable and potent, but it is not an automatic, airtight defense to every sports injury, and should not be held applicable to the present case (see discussion Prof. Simons, Reflections, 50 UCLA L Rev at 521-522 [discussing a hypothetical of a doubles tennis game where, after some intense, hard-hitting tennis, an agreement is made by all participants to slow down the game, an injury ensues when one of the players cannot resist to smash the ball down very hard in response to a high lob]).
At trial, a trier of fact might even conclude that plaintiff Livshitz was “negligent in paying insufficient attention or in otherwise failing to use due care to exercise the skill of which [s]he is capable” (Prof. Simons, Reflections, 50 UCLA L Rev, at 491 n 30, supra). The trier of fact has a right to determine whether the instructor similarly was negligent in hitting balls *468 without regard to whether the drill participant was prepared to respond to the volley. Chief Judge Cardozo, indeed, noted in Murphy. “A different case would be here if the dangers inherent in the sport were obscure or unobserved” (250 NY at 483).
The defendant’s motion for summary judgment is denied.

. “Volenti non fit injuria” is a law Latin phrase meaning “a person is not wronged by that to which he or she consents,” referring to the principle that a person who knowingly and voluntarily risks danger cannot recover for any resulting injury (Black’s Law Dictionary 1569 [7th ed 1999]).

. An excellent discussion of the Murphy case is contained in Professor Kenneth W. Simons’s insightful article, Reflections on Assumption of Risk (50 UCLA L Rev 481 [2003]) with repeated references to the decision, and in his chapter The Story of Murphy v. Steeplechase Amusement Co.: While The Timorous Stay at Home, the Adventurous Ride the Flopper, in the recently released Tort Stories (Robert Rabin & Stephen Sugarman, editors, Foundation Press 2003 [revealing that some important facts about “the Flopper” were not contained in the Murphy decision]).

. The skiing examples given in the 1992 decision in Knight are, indeed, supported by recent New York ski cases (see, e.g., Lubow v Ski Windham Operating Corp., 2003 WL 1338459, 2003 US Dist LEXIS 4064 [ND NY 2003] [denying summary judgment]; De Lacy v Catamount Dev. Corp., 302 AD2d 735 [3d Dept 2003] [same]). Another example and discussion of secondary assumption of risk is found in Collier v Northland Swim Club (35 Ohio App 3d 35, 518 NE2d 1226 [1987]), regarding a dive by an 11-year-old child into a shallow pool, resulting in serious injury. A discussion of Collier is contained in Drago, Age-Old Defense (12 Fordham Intell Prop Media & Ent LJ at 605-607).

. The fact that New York courts are just beginning to be careful in defining and describing the type of assumption of risk, primary or secondary, can be seen by a recent decision of the Appellate Division, Fourth Department, in Lamandia-Cochi v Tulloch (305 AD2d 1062 [2003]), referring to “the doctrine of primary assumption of risk.”