■ MARION F. WERTHEIM, as Executrix of RICHARD M. WERTHEIM, Deceased, et al., Respondents, v UNITED STATES TENNIS ASSOCIATION, INC., Appellant.—Order of the Supreme Court, New York County (Andrew Tyler, J.), entered on or about May 22, 1987, which, *inter alia,* denied defendant-appellant's motion for an order setting aside the jury finding that defendant was 25% liable, unanimously reversed, on the law, the motion granted, and the complaint dismissed, with prejudice, and without costs.

In this wrongful death action, the decedent, Richard Wertheim, was struck in the groin by a tennis ball that had just been served by a top-ranked player in the United States Tennis Open in Flushing, New York, in 1983. At the time, Mr. Wertheim was acting as an umpire whose responsibility it was to call whether a serve was within the boundary set by the center line. He was 61 years of age and had a 20-year history of arteriosclerotic cardiovascular disease.

The fatal serve was an "ace" that landed within the boundary but cut with a spin and struck Mr. Wertheim. Eyewitnesses testified at trial that Mr. Wertheim upon being struck turned to face the backdrop, his knees buckled and his hands reached into the air and to his forehead as he fell backward. His head loudly struck the hard surface of the court. He received immediate medical attention and was hospitalized, but he died four days later. The cause of death was listed as subdural hematoma.

The theory of plaintiff's case was that defendant, the United States Tennis Association, Inc., had unreasonably enhanced plaintiff's risk of injury by requiring line umpires to stand in the "ready position" until the ball was in play. Previously linesmen, as such umpires are called, either sat in elevated chairs or stood at full height. The ready position required the linesman to lean forward with his or her hands placed on or

above the knees. The purpose of the ready position was to make the linesmen look more professional and more a part of the game.

We hold that the decedent's injuries and subsequent death were not the proximate result of a breach of duty owed by defendant to the decedent. As a matter of law, a participant in a sporting event assumes the risk of injuries normally associated with the sport. *(See, McGee v Board of Educ.,* 16 AD2d 99, *appeal dismissed* 12 NY2d 1100; *Dillard v Little League Baseball,* 55 AD2d 477, *lv denied* 42 NY2d 801.) Being hit by a tennis ball is surely a risk normally associated with the sport as far as umpires are concerned. In our view, this case is controlled by the rule of *Turcotte v Fell* (68 NY2d 432). In that case, the Court of Appeals held that by participating in a sporting event, the plaintiff had consented that the extent of the duty owed to him by the defendant-appellant was no greater than merely to avoid reckless or intentionally harmful conduct. *(Supra,* at 437.) Here, the decedent was fully aware of the risk of being hit by a ball traveling at a rate of speed in excess of 120 miles per hour. Therefore, the claim should have been dismissed as a matter of law. *(See, Maddox v City of New York,* 66 NY2d 270.)

We hold as a matter of law that the requirement by defendant-appellant that umpires assume the ready position until the ball is in play was not reckless. Therefore, defendant-appellant did not breach its duty of care owed to the decedent. The "enhanced risk" cases cited by respondent are not controlling on this record. Generally the enhanced risk doctrine in sports injury cases involves fact patterns where a coparticipant engages in reckless conduct causing injury to another participant. *(See, Jackson v Livingston Country Club,* 55 AD2d 1045.)￼ In that situation the duty to avoid reckless conduct is breached. *(See, Turcotte v Fell, supra.)* Other factual contexts have given rise to liability for sports injuries under the enhanced risk doctrine where the injury proximately resulted from risk-enhancing conduct that was not inherent in the sport. *(See, Stevens v Central School Dist. No. 1,* 21 NY2d 780 [basketball player injured plunging his arm through nonsafety glass in window behind net]; *Cole v New York Racing Assn.,* 17 NY2d 761 [jockey thrown from horse and killed by impact with raised concrete footing on metal post along track].)

We are of the opinion that if requiring the ready position did enhance the risk of injury to umpires, the degree of enhancement was marginal, and the actions of appellant in setting this requirement did not rise to the level of reckless-

ness. For risk-enhancing conduct to be actionable, the enhancement must be substantial and the culpable conduct unreasonable. *(See, Benitez v New York City Bd. of Educ.,* 141 AD2d 457.)* The risk-enhancing conduct must also be of such a substantial nature as to constitute a breach of duty for it to be actionable. Here the applicable duty owed to the decedent was to avoid reckless or intentionally harmful conduct. *(Turcotte v Fell, supra.)*

Even if there were a breach of duty under the circumstances presented, we would find it an extremely dubious proposition that the decedent's apparent stroke was the proximate result of the impact of the tennis ball. In light of the severity of the decedent's chronic cardiovascular disease, a condition well known to him in light of his heart attack at age 40 and subsequent stroke, we can only view his decision to participate in the sports arena, albeit as a referee but nonetheless in the line of fire of speeding tennis balls, as an assumption of the further risk of aggravation of his delicate medical condition. The eyewitness testimony was consistent with the opinion of appellant's expert that the decedent suffered a stroke upon being hit by the ball.

In light of our determination, it is unnecessary to consider the other issues raised by appellant. Concur—Murphy, P. J., Sullivan, Ross, Kassal and Ellerin, JJ.