## PHI DELTA THETA COMPANY d/b/a Phi Delta Theta Fraternity, et al., Petitioners,

v.

## Edward Lockwood MOORE III, Respondent.

### No. 98–0601.

Supreme Court of Texas.

July 1, 1999.

Ronald L. Bair, Robert R. Pruitt, Wilton F. Chalker, Henry S. Platts, Houston, for Petitioners.

Clinard J. Hanby, The Woodlands, R. L. Pete McKinney, Houston, for Respondent.

Justice ENOCH, joined by Justice HECHT, dissenting to the improvident grant.

This case presents a significant issue that we have never taken up. The issue, broadly stated, is what tort liability rule should apply when a participant in a sports or recreational activity sues over an injury suffered during play. The practical importance of this issue is undeniable because the every-day scenarios that may give rise to it are myriad. Indeed, it is hard to imagine a sport or recreational activity whose participants, sponsors, coaches, and venue providers will not be affected by our treatment of this issue. And even though this issue has caught the attention of the drafters of the Restatement of the Law of Torts and many state supreme courts have considered it, we decide today not to consider it. I dissent from the denial of this petition as improvidently granted.

In suits by a participant against a co-participant, some Texas courts of appeals have adopted a limited tort liability rule requiring a participant to prove reckless or intentionally injurious conduct, rather than merely negligent conduct, in order to recover against a co-participant for acts that took place during play. This case involves a suit by an injured participant against a nonparticipant, the sponsor of a game. The court of appeals held that the reckless-intentional rule does not apply in a suit by a participant against a nonparticipant.[1] If the court had not improvidently granted this case, I would have urged that, in lieu of the reckless-intentional standard, we adopt a duty rule for sports and recreational injury cases that applies to co-participant defendants and nonparticipant defendants alike: a defendant in a sports or recreational injury case does not owe a duty to protect a participant from risks inherent in the sport or activity in which the participant has chosen to take part. Accordingly, I would have provided guidance to the trial court on the proper standards to be applied on remand.

In September 1992, Edward Lockwood Moore participated in an event called "War Games." The event was sponsored by the Texas Eta Chapter of Phi Delta Theta Fraternity as a "rush" activity for prospective pledges. The game employs pistols powered by compressed carbon dioxide that fire gelatin-covered balls containing liquid paint. During the game, participants try to shoot the opposing team's members with paint balls that are supposed to break and splatter on contact. The last team with an unpainted member wins the game. The fraternity provided the equipment for War Games, including protective goggles, to all participants, free of charge.

During his second day of play, Moore was struck in the eye by a paint ball. The blow permanently blinded Moore in one eye. Moore's injury occurred after a tree limb snagged and lifted his protective goggles, exposing his eye. Moore also as-

1. 976 S.W.2d 738, 742.

serts, and we would assume for purposes of reviewing the trial court's summary judgment,[2] that the dislodging of Moore's goggles and the blow to his eye were nearly simultaneous events, leaving him no time to replace his goggles before being hit by the paint ball that blinded him.

Moore sued Phi Delta Theta Fraternity, the Texas Eta Chapter of Phi Delta Theta, and the Texas Eta chapter's president, Chris Leonard (collectively the "Fraternity"), for negligently creating the circumstances that brought about his injury.

The Fraternity moved for summary judgment, relying on *Connell v. Payne*[3] for the proposition that Moore, by his voluntary participation in "War Games," expressly assumed the risk of injury and that, in order for Moore to prevail, he must prove the Fraternity's acts were reckless or intentionally meant to cause Moore's injury. The trial court granted summary judgment "on the basis that plaintiff [Moore] assumed the risks of injury in the paint ball game."

Moore first asserted on appeal that the trial court erred in granting summary judgment based on assumption of the risk because this court abolished that doctrine as a complete defense to tort liability in *Farley v. MM Cattle Company.*[4] The court of appeals concluded that the trial court's summary judgment was based on an application of the reckless-intentional standard which is an extension of the express assumption of the risk doctrine retained in *Farley.*[5] But the court of appeals, noting that no Texas court had applied the reckless-intentional standard in a suit against a nonparticipant, declined to apply the rule in this case.[6] Accordingly, the court of appeals reversed the trial court's judgment.[7]

The reckless-intentional standard was adopted by some Texas courts of appeals at least partially based on the erroneous conclusion that mere participation in a risky sport amounts to express assumption of the risk.[8] Because of the confusion that has resulted from this error concerning the application of assumption of the risk principles in sports injury cases, I would first consider what bearing the assumption of the risk defense has on the issue in this case and on other cases arising from sports and recreational injuries. I would point out that equating voluntary participation in a sport with express assumption of the risk is inconsistent with our holding in *Farley,*[9] in which we first considered the defensive use of assumption of the risk after the Legislature adopted comparative negligence.[10]

Traditionally, there were two basic variations of the affirmative defense of assumption of the risk—express and implied. "Express assumption of the risk" arose when the plaintiff explicitly consented, through written or oral agreement, before engaging in risky conduct to take personal responsibility for potential injury-causing risks.[11] "Implied assumption of the risk" arose when the plaintiff's willingness to personally accept responsibility for risks was not evidenced by an oral or written agreement, but rather implied by conduct such as voluntary participation in a risky

**2.** *See, e.g., Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

**3.** 814 S.W.2d 486, 488–89 (Tex.App.—Dallas 1991, writ denied).

**4.** 529 S.W.2d 751, 758 (Tex.1975).

**5.** 976 S.W.2d at 741.

**6.** *Id.* at 742.

**7.** *Id.*

**8.** *Id.* at 741 (citing *Connell v. Payne,* 814 S.W.2d 486, 488–89 (Tex.App.—Dallas 1991, writ denied)).

**9.** 529 S.W.2d at 758.

**10.** *See id.; see also Rosas v. Buddies Food Store,* 518 S.W.2d 534, 538–39 (Tex.1975).

**11.** *See* RESTATEMENT (SECOND) OF TORTS § 496 B (1965).

activity.[12] In *Farley*, we retained "voluntary assumption of risk" only in cases in which there is "express oral or written consent."[13] In other words, we abolished the affirmative defense of "implied assumption of the risk" and retained the affirmative defense of "express assumption of the risk."

Thus, in *Farley* we made clear that a plaintiff's mere voluntary participation in a known dangerous activity may no longer totally bar recovery. The defense of express assumption of the risk is available only to one who proves that the plaintiff gave express oral or written consent before encountering the injury-causing risk. Nothing short of that amounts to express assumption of the risk. In no way can mere participation in any risky activity, sports-related or other, be characterized as express assumption of the risk.

Now, the fact that a plaintiff voluntarily encountered a known risk may act as a comparative defense only. In a negligence case today, the factfinder is asked to allocate a "percentage of responsibility" to each party that contributed to the cause of the harm.[14] The factfinder, of course, considers plaintiff's negligence in apportioning responsibility, but may also consider plaintiff's knowledge of the injury-causing risk, regardless of whether the decision to encounter the risk was reasonable or unreasonable, when apportioning damages. To the extent that our decision in *Farley* left any doubt, I would make make clear that the defense of implied assumption of the risk in whatever form has been completely absorbed into the allocation of damages through proportionate responsibility.

I would next consider the question of whether a limited tort liability rule should apply when a sports or recreational participant sues over an injury suffered during play. This question has commanded the attention of many courts and commentators already.[15] In taking it up, I would consider first what public policy gives rise to the need for a limited liability rule in this area.

In considering this same issue, the New Jersey Supreme Court observed, "One might well conclude that something is terribly wrong with a society in which the most commonly-accepted aspects of play—a traditional source of a community's conviviality and cohesion—spurs litigation."[16] This statement encapsulates one side of the dilemma courts have faced in determining the scope of liability for sports and recreational injuries—public policy disfavors imposing tort liability for the actions of participants during play. Indeed, the reckless-intentional rule for sports injuries is rooted in the belief that law should not unreasonably burden free and vigorous participation in sports and recreational activities.[17]

As a practical matter, conduct that would be considered tortious in other contexts is generally accepted, if not encouraged, in athletic competitions and vigorous recreational activities. Examples of such conduct abound in football, boxing, hockey, basketball, judo, karate, wrestling, lacrosse, soccer, and countless other sports and activities. Imposing civil liability for injuries resulting from such conduct certainly "could curtail the proper fervor with which [sports and certain recreational activities] should be played and discourage

12. *See* RESTATEMENT (SECOND) OF TORTS § 496 C (1965).

13. 529 S.W.2d at 758.

14. *See* TEX. CIV. PRAC. & REM.CODE § 33.011(4).

15. *See generally* Mel Narol, *Sports Participation with Limited Litigation: The Emerging Reckless Disregard Standard*, 1 SETON HALL J. SPORT L. 29 (1991); Daniel E. Lazaroff, *Torts*

*& Sports: Participant Liability to Co-participants for Injuries Sustained During Competition*, 7 U. MIAMI ENT. & SPORTS L.REV. 191 (1990).

16. *Crawn v. Campo*, 136 N.J. 494, 643 A.2d 600, 607 (1994).

17. *See Nabozny v. Barnhill*, 31 Ill.App.3d 212, 334 N.E.2d 258, 260 (1975).

individual participation."[18] This concern—that the specter of tort liability should not taint the vigor of competition or discourage participation in athletic and recreational events—is echoed by other jurisdictions that have considered this issue,[19] as well as the court of appeals in this case.[20]

Public policy also disfavors imposing tort liability in participant suits against certain nonparticipants. Participation in many sports and activities would be impossible absent the efforts of nonparticipants like coaches, event sponsors, venue owners, sanctioning and rule-making bodies, and private sports clubs. Allowing nonparticipants to face the threat of civil liability for injuries resulting from risks inherent in their sport or activity leaves them with few options for reducing the potential for liability. A nonparticipant has only limited, if any, control over the participants' conduct on the field of play. And risks that are inherent in the sport cannot be completely eliminated if play continues. The only certain way for nonparticipants to eliminate the potential for liability is to stop sponsoring, coaching, hosting, or otherwise associating themselves with any risky sport or activity. Public policy disfavors that result. Indeed, based on this reasoning, courts in several states that have adopted some form of limited tort liability for co-partici-

pant-defendants, have applied the same rule to nonparticipant-defendants.[21]

At the same time, participation in athletic competitions or recreational activities should not be viewed as a carte blanche for inappropriate injurious conduct.[22] Hence, the other side of the dilemma courts face on this issue is that the tort liability rule for sports and recreational injuries should not eliminate all incentive participants have to confine their actions at play to those acceptable in a civilized society. "[O]rganized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete onto the playing field."[23] Indeed, one of the primary benefits of athletic competition, particularly in young athletes, is "the development of discipline and self-control."[24] Accordingly, in considering this issue, courts and commentators have attempted to strike a balance between protecting the free and vigorous participation in sports and recreational activities and ensuring the relative safety of participants.

I believe the best way to achieve the desired balance is to adopt a limited duty rule for defendants that is applicable when a participant in a sport or recreational activity sues over injuries suffered during play. The rule I would adopt is: a defendant does not owe a duty to protect a participant from risks inherent in the sport or activity in which the participant has chosen to take part.[25] This suggested rule

**18.** *Ross v. Clouser,* 637 S.W.2d 11, 14 (Mo. 1982).

**19.** *See, e.g., Crawn,* 643 A.2d at 604; *Dotzler v. Tuttle,* 234 Neb. 176, 449 N.W.2d 774, 778 (1990); *Gauvin v. Clark,* 404 Mass. 450, 537 N.E.2d 94, 96 (1989); *Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699, 703 (1990); *Ross,* 637 S.W.2d at 14.

**20.** 976 S.W.2d at 741.

**21.** *See, e.g., Staten v. Superior Court,* 45 Cal. App.4th 1628, 53 Cal.Rptr.2d 657, 658–59 (1996); *Kline v. OID Assoc., Inc.,* 80 Ohio App.3d 393, 609 N.E.2d 564, 565 (1992); *Benitez v. New York City Board of Educ.,* 73 N.Y.2d 650, 543 N.Y.S.2d 29, 541 N.E.2d 29, 32–33 (1989); *Wertheim v. United States Ten-*

*nis Ass'n,* 150 A.D.2d 157, 540 N.Y.S.2d 443, 444–45 (1989); *see also* Narol, *supra* note 15, at 39–40.

**22.** *Nabozny,* 334 N.E.2d at 260–61.

**23.** *Id.* at 260; *see also Ross,* 637 S.W.2d at 14 ("[R]easonable control should exist to protect the players and the game."); *Thompson v. McNeill,* 53 Ohio St.3d 102, 559 N.E.2d 705, 707 (1990) ("[W]e do not embrace the notion that a playing field is a free-fire zone.").

**24.** *Nabozny,* 334 N.E.2d at 260.

**25.** *See generally Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 708–09 (1992); *Morgan v. State,* 90 N.Y.2d 471, 662

is based on normative policy decisions about what kind of conduct is acceptable in the context of sports and recreational activities.

The risk of injury, in varying degrees, is inherent in every sport or recreational activity.[26] This is true regardless of whether the sport or activity is organized or unorganized, contact or noncontact, and regardless of the ages of the participants. As my earlier discussion revealed, it contradicts public policy to impose upon defendants a duty to refrain from conduct that is contemplated by the customs and rules of the sport or activity in which the defendant is engaged. Accordingly, a defendant cannot owe a duty to protect a participant from risks that unavoidably arise from such conduct. Under the rule I would urge, we would consider the nature of the sport or recreational activity to determine what conduct is an accepted part of the sport or activity, and, consequently, what risks are inherent in that sport or activity.[27] Thus, the duty determination in sports and recreational injury cases would focus on whether, from an objective standpoint, the risk that resulted in plaintiff's injury was inherent in the nature of the sport or activity. If the injury-causing risk was inherent, the defendant owes the participant-plaintiff no duty and summary judgment is proper. If the injury-causing risk was not inherent, the case may proceed on an ordinary negligence theory.

In determining what risks are inherent, I would focus on the risk that caused the injury, not on the injury itself. For instance, a court might properly consider whether getting hit by an errant golf ball is a risk inherent in the sport of golf, but not whether broken teeth that result from getting hit by a golf ball is an injury inherent in golf. Or, a court might properly consider whether injury from being tackled in a football game is a risk inherent in the sport of football, but not whether a broken neck that results from a tackle is an injury inherent in football. Indeed, an injury common to a particular sport or activity (e.g., a pulled back muscle in golf) could result from a risk not inherent in that sport (e.g., the risk of being tackled by another golfer). Under the rule I would adopt today, there are no inherent injuries, only inherent risks.

Clearly, not every injury that occurs during a sporting event or recreational activity is the result of an inherent risk. Under the inherent risk standard, a defendant should not be absolved of liability for injuries that result from risks which are not peculiar to participation in the sport or activity in question. For example, a sink hole in a public playing field is not a risk that arises from the nature of participation in some sport or activity. Any member of the public who enters the playing field, whether participating in a sport or not, is subject to the same risk. Accordingly, ordinary premises liability rules [28] continue to apply in cases where a player is injured by dangerous conditions on the premises created by negligent upkeep of playing fields or other facilities.

The tort liability rule I would urge satisfies the competing public policy concerns by enabling participants to play within the normal customs of their chosen sport without incurring liability. At the same time, when a defendant creates a risk separate and apart from those that arise from the nature of the sport, a defendant is subject to the ordinary rules of negligence for determining liability.

Most jurisdictions that have considered the issue of tort liability for sports and recreational injuries have adopted the rule

N.Y.S.2d 421, 685 N.E.2d 202, 208 (1997); *Turcotte v. Fell,* 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964, 968 (1986).

**26.** *See Crawn,* 643 A.2d at 603.

**27.** *See Knight,* 11 Cal.Rptr.2d 2, 834 P.2d at 708–09; *Morgan,* 662 N.Y.S.2d 421, 685 N.E.2d at 208.

**28.** *See, e.g., Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295–96 (Tex.1983).

that defendant's conduct must be "reckless" or "intentionally" injurious, rather than merely negligent, for a participant-plaintiff to prevail in a sports or recreational injury suit.[29]  While I too would resolve this case by adopting a limited duty for the defendant, I would decline to adopt the reckless-intentional standard. As applied, both the reckless-intentional standard and the inherent risk standard turn on an analysis of the nature of the sport in question and a determination of what risks are normally created by the nature of the sport.[30]  I believe focusing on inherent risk is the more direct approach, and its objective focus, unlike the reckless-intentional standard, would allow summary disposition to act as a meaningful screen on frivolous suits.[31]

For the reasons stated above, I dissent to the denial of this petition as improvidently granted.

Justice OWEN, dissenting to the improvident grant.

I agree with Justice Enoch that this case presents an important issue that the Court should consider.  Accordingly, I also join in dissenting from the denial of this petition.  However, I reserve judgment on the merits of the issue presented in this case.

---

**29.**  *See, e.g., Connell,* 814 S.W.2d at 489; *Crawn,* 643 A.2d at 605; *Dotzler,* 449 N.W.2d at 779; *Gauvin,* 537 N.E.2d at 95; *Marchetti,* 559 N.E.2d at 703–04; *Nabozny,* 334 N.E.2d at 261; *Ross,* 637 S.W.2d at 13–14.

**30.**  *See, e.g., Thompson,* 559 N.E.2d at 708 (defining reckless conduct as "any conduct which is characterized by the strong probabil-

ity of harm that recklessness entails, and which *occurs outside the normal conduct and customs of the sport* ") (emphasis added).

**31.**  *See Davis v. Greer,* 940 S.W.2d 582, 583 (Tex.1996) (Gonzalez, J., dissenting to denial of application for writ of error).