Affirmed and Majority and Dissenting Opinions filed September 27, 2007








Affirmed and Majority and
Dissenting Opinions filed September 27, 2007.         

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00822-CV

_______________

 

ROBIN CHRISMON and LONNIE CHRISMON, Appellants

 

V.

 

HAROLD J. BROWN, INDIVIDUALLY and as an AGENT OF
REGISTERED TEAMS OF THE AMATEUR SOFTBALL ASSOCIATION OF AMERICA and REGISTERED
TEAMS OF THE AMATEUR SOFTBALL ASSOCIATION OF AMERICA, Appellees

                                                                                                                                            
   

On Appeal from 127th District Court

Harris County, Texas

Trial Court Cause No. 04-00932

                                                                                                                                               


 

D I S S E N T I N G   O P I N I O N

 

For the following reasons, I disagree
with the Majority Opinion=s decision to adopt an inherent risk limitation on the
liability of sports injury defendants and to affirm on that basis the summary
judgment against the Chrismons= claims for vicarious liability against Registered Teams.








First, because neither party asserted
adoption (or non-adoption) of the inherent risk standard in the trial court, no
decision on that issue is before us for review, and it is not a ground on which
the summary judgment can be affirmed.[1]  Although
Registered Teams=s no-evidence motion for summary judgment (the Amotion@) stated that the Chrismons had no
evidence of Aa legal duty owed by one person to another,@ it then proceeded to not only
acknowledge the existence of a duty, but also to identify it and assert there
was no evidence of a breach of that duty:

The plaintiff must establish both the
existence of a duty and the violation of that duty by the defendant.

More
importantly, the duty that the Plaintiffs must prove to have been breached
is the duty to act as a reasonable person under the specific circumstances in
question.  In the present context, Brown was a volunteer softball coach.  Plaintiffs
have failed to show that his actions . . . were unreasonable in light of
his role or the common activity in which both he and Robin Chrismon were
engaged.

(citations omitted) (emphasis added).[2] 
On appeal, the Majority retroactively adopts a new and higher inherent risk
negligence duty standard that the record does not reflect was ever mentioned in
the trial court, and then affirms on the basis that Robin produced no evidence
to create a fact issue on the Aexistence@ of a duty under that newly raised standard.








Importantly, however, there is no
question on the existence[3] of a legal
duty in this case, but only on the standard of liability that applies to that
duty.  Everyone, including the Majority, agrees that Registered Teams owed
Robin a legal duty, and the Majority even acknowledges that the inherent risk
duty that Registered Teams owed to Robin is a negligence duty.  There is thus
only a dispute as to whether the applicable standard of liability for that
negligence duty should be ordinary negligence or inherent risk.  Accordingly,
the only real question is whether the Chrismons produced evidence to raise a
fact issue on a breach of a negligence duty, and the summary judgment cannot be
affirmed on a no-duty ground in any respect.

Regarding the breach of duty, an
assertion of no evidence of a breach of the ordinary negligence duty, as
asserted in the motion, is distinct from a contention that there is no evidence
of breach under a higher (inherent risk) negligence standard, and the former
does not put the nonmovant or trial court on notice that the latter is being
asserted (which it was not in this case).  Therefore, by affirming the summary
judgment on a different ground than was presented in the motion, the Majority=s decision defeats the objectives of:
(1) putting the nonmovant on notice of the actual grounds for the summary
judgment so they may have a fair chance to respond;[4]
and (2) reviewing a summary judgment based on an issue that was actually before
the trial court.  Rather than using the no-evidence summary judgment procedure
to fairly refrain from holding trials on claims for which evidence is lacking,
this allows that procedure to be used as a disguised method of defeating claims
on purely legal grounds that are raised for the first time on appeal and then
applied to the case retroactively.[5]  It thus
serves no useful purpose, but merely creates a mechanism for summary judgment
by ambush.








            Similarly, by affirming
the summary judgment on a different legal standard than was either pleaded or
asserted in the summary judgment materials, or was existing under prevailing
law, the Majority allows a no-evidence summary judgment to be granted and
affirmed for what it has essentially turned into an after-the-fact failure to
state a cause of action (by pleading a now inapplicable standard for the
negligence duty that it concedes was owed) without requiring special exceptions
to be filed or allowing the plaintiff an opportunity to replead.[6]








Second, although this may be an issue
of first impression in this court, at least seven opinions from five other
Texas appeals courts have addressed the duty standard applicable to sports
injuries, and all seven applied or recognized the reckless or intentional
conduct standard.[7]  The Texas
Supreme Court denied review in five of the six of those cases in which a writ
application was filed, and reversed on other grounds in the sixth.[8] 
More importantly, however, in two of the five cases in which review was denied,
three justices dissented specifically on the ground that the inherent risk
standard should be adopted, but a majority of the Court nevertheless declined
to do so.  See Phi Delta Theta Co. v. Moore, 10 S.W.3d 658, 658-62 (Tex.
1999) (Enoch, J., dissenting); Davis v. Greer, 940 S.W.2d 582, 582-83
(Tex. 1996) (Gonzalez, J., dissenting).  In this case, by adopting a standard
that the Texas Supreme Court has twice affirmatively declined to adopt, does
the Majority Opinion presume to tacitly overrule those decisions or to just
extend the Court another opportunity and invitation to finally Aget it right?@

Third, contrary to the simplistic
manner in which the Majority casts this issue, it involves important,
wide-ranging, and competing policy considerations with which courts in Texas
and elsewhere have had considerable difficulty, not only in selecting among the
alternative standards, but, more importantly, in finding a uniform or coherent
basis on which to apply any of them.[9]  Any decision
on whether to adopt a completely different liability standard than any other
Texas appeals court has applied should be made by the Texas Supreme Court after
the issue has been properly developed in the lower courts and adequately
briefed and analyzed, none of which has occurred in this case.[10]

 

 

 

/s/        Richard H. Edelman

Senior Justice

 

Judgment rendered and Majority and
Dissenting Opinions filed September 27, 2007.

Panel consists of Justices Fowler,
Frost, and Edelman.*  (Frost, J., majority)









[1]           See, e.g., Haase v. Glazner,
62 S.W.3d 795, 800 (Tex. 2001) (reiterating that summary judgment cannot be
affirmed on an argument not expressly presented in the motion for summary
judgment);  Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911-12
(Tex. 1997) (holding that a traditional motion for summary judgment based on
the no-duty ground of no exercise of control over the adjacent premises did not
allow affirmance based on the no-duty ground of not having creating the
dangerous condition); Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d
796, 805 (Tex. 1994).





[2]           Although inconsistent positions can be
asserted in the alternative, Registered Teams=s motion contained no language indicating any such intent.





[3]           A true no-duty case is where, for example,
a property owner asserts that it owes no legal duty of any kind to a
plaintiff for an injury caused by a premise defect because the property owner
retained no right of control over the property.  See, e.g., Science Spectrum,
941 S.W.3rd at 911B12.  The Majority actually rules that there is no
evidence of a breach of the inherent risk negligence duty that it
acknowledges was owed, but attempts to label that ruling as no evidence of a
duty.





[4]           Was Robin also required to raise a fact
issue under each of the other two alternative liability standards identified in
the Majority Opinion in case it might have chosen to adopt one of those
instead?





[5]           Court decisions should not be applied
retroactively where, as is likely here: (1) the decision establishes a new
principle of law by either overruling clear past precedent on which litigants
may have relied or by deciding an issue of first impression whose resolution
was not clearly foreshadowed; or (2) retroactive application could produce
substantial inequitable results.  See, e.g., Baker Hughes, Inc. v. Keco R.
& D. Inc., 12 S.W.3d 1, 4-5 (Tex. 1999).





[6]           See, e.g., Friesenhahn v. Ryan, 960
S.W.2d 656, 658-59 (Tex. 1998) (reversing summary judgment, claiming that
pleadings failed to state a cause of action by not alleging a legal duty owed
by the defendants, because plaintiffs had not been put on notice that their
pleadings were deficient and given an opportunity to amend); Peek v. Equip.
Serv. Co. of San Antonio, 779 S.W.2d 802, 805 (Tex. 1989) (reiterating that
unless the petition affirmatively demonstrates that no cause of action exists
or that the plaintiff=s recovery is barred, a trial court must give a
plaintiff an opportunity to amend before granting a summary judgment on the
plaintiff=s failure to plead facts that state a cause of
action).





[7]           See Southwest Key Program, Inc. v.
Gil-Perez, 79 S.W.3d 571, 575-76 (Tex. App.CCorpus Christi 2000), rev=d on other grounds, 81 S.W.3d
269, 274-75 (Tex. 2002);  Monk v. Phillips, 983 S.W.2d 323, 324-26 (Tex.
App.CFort Worth 1998, pet. denied); Moore v. Phi Delta
Theta, 976 S.W.2d 738, 741-42 (Tex. App.CHouston
[1st Dist.] 1998, pet. denied); Greer v. Davis, 921 S.W.2d
325, 328-29 (Tex. App.CCorpus Christi 1996, writ denied); Allen v. Donath,
875 S.W.2d 438, 440 (Tex. App.CWaco 1994, writ
denied); Hathaway v. Tascosa Country Club, Inc., 846 S.W.2d 614, 616-17
(Tex. App.CAmarillo 1993, no writ); Connell v. Payne, 814
S.W.2d 486, 489 (Tex. App.CDallas 1991,
writ denied).  Because Registered Teams did not seek summary judgment based on
the intentional-reckless duty standard, the summary judgment could not have
been affirmed on the Chrismons= failure to
present evidence to satisfy that standard.





[8]           See supra, note 7.





[9]           See, e.g., Matthew G. Cole, No
Blood No Foul: The Standard of Care in Texas Owed by Participants to One
Another in Athletic Contests, 59 Baylor L. Rev. 435 (2007).  Similarly,
although aware of the inherent risk standard, the Legislature has seen fit to
impose it in only one very limited context, that being injury or damage
occurring in an equine activity or livestock show.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 87.003 (Vernon 2005).  Moreover, although former
Justice Enoch has argued that the inherent risk doctrine is somehow distinct
from the former implied assumption of the risk doctrine that has, with
exceptions not applicable here, been subsumed into comparative responsibility,
it is not apparent to me how the two are conceptually different.  See Phi
Delta Theta, 10 S.W.3d at 659-62 (Enoch, J., dissenting).





[10]          Even Justice Enoch=s dissent recognizes that the policy justifying a
heightened sports liability standard is to prevent tort liability from
curtailing the competitive fervor with which sports should be played.  See
Phi Delta Theta, 10 S.W.3d at 660B61. 
However, contrary to the Majority=s
treatment of Robin as a participant in this case, she was not a player, and her
injury did not result from any competitive activity by a player.  A heightened
standard is thus no more justified in this context than if Brown had
inadvertently jammed Robin=s hand in the
dugout gate or dropped the equipment bag on her foot.





*           Senior Richard H. Edelman sitting by
assignment.