**Reverse and Render; Opinion Filed April 7, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00171-CV

### ORVILLE PAUL DUNAGAN, Appellant
### V.
### BRYAN COLEMAN, Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 07-05904-E/G**

## OPINION

Before Justices Moseley, FitzGerald, and Evans
Opinion by Justice Evans

In this appeal from a jury trial, Orville Paul Dunagan contends the trial court erred in failing to direct a verdict in his favor on the negligence claim against him. Because we conclude the ordinary negligence standard does not apply and there was no evidence that Dunagan engaged in reckless conduct, we reverse the trial court's judgment and render judgment in favor of Dunagan.

### FACTUAL BACKGROUND

Orville Paul Dunagan and Bryan Coleman were friends and teammates on a slow-pitch softball team. Before the incident made the subject of this lawsuit, the men had played softball together for several years. The league in which they played included men with varying degrees

of athletic ability, but both men acknowledged that Coleman was one of the better players. Coleman had played baseball throughout high school.

According to Coleman, the relevant facts regarding the incident are as follows. One evening, before the start of the first game of the season, Dunagan asked Coleman to catch a few pitches from him because he had not pitched in several weeks and he needed to "locate the plate." Coleman agreed and got into the catcher's position behind home plate. Dunagan threw a series of underhanded pitches which Coleman caught and threw back. Dunagan then pitched two overhand curve balls, the first of which came close to hitting an umpire standing nearby. Before each pitch, Dunagan signaled that he was throwing a curve ball. Coleman testified that, after the second curve ball, he heard the umpire say "Hey," which indicated to Coleman that Dunagan needed to stop throwing overhand. According to Coleman, he shook his head and the ball at Dunagan in an effort to communicate this and resumed his crouching position behind the plate.

Coleman testified that, after he resumed the crouching position, he was watching the other players mingle around when he noticed Dunagan kick his leg up to pitch. Dunagan then threw a hard rising fast ball which Coleman attempted to catch but missed. The ball hit Coleman in the mouth causing significant injuries. Coleman stated he did not have enough time to react to the pitch. A fellow player testified that Coleman told him he was wearing a new glove that was shorter than his old glove which may have led to him missing the catch. Dunagan acknowledged that he gave no signal to indicate the type of pitch he was throwing before throwing the fast ball.

Coleman brought this suit against Dunagan alleging claims for negligence and gross negligence. Dunagan moved for a traditional summary judgment on Coleman's claim for negligence contending the ordinary care standard did not apply to the inherent risks associated with playing sports. Dunagan also moved for a no evidence summary judgment on Coleman's claim for gross negligence arguing there was no evidence of an extreme degree of risk or that he

acted with an awareness of an extreme degree of risk and proceeded with a conscious indifference to Coleman's rights, safety, or welfare. The trial court granted summary judgment in favor of Dunagan as to Coleman's gross negligence claim.

The case then proceeded to trial before a jury solely on Coleman's negligence claim. Dunagan moved for a directed verdict twice, once after Coleman rested his case and again after the close of evidence. Dunagan contended he owed no duty of ordinary care to Coleman for conduct while participating in a sport and there was no evidence to support a finding against him under the negligence standard applicable to sports injuries. Dunagan noted that the trial court had already granted summary judgment on Coleman's claims for gross negligence. The trial court denied Dunagan's motions.

The charge given to the jury included two liability questions. Dunagan objected to both questions on several grounds, including that there was no evidence to support their submission. The jury was first asked whether the occurrence was proximately caused by the negligence of either party and, if so, what percentage of negligence was attributable to each. Negligence was defined under the ordinary negligence standard. The jury answered the question in the affirmative and attributed 100% of the negligence to Dunagan.

The charge next asked whether Dunagan engaged in reckless conduct that was a proximate cause of the occurrence. "Reckless conduct" was defined as conduct which the person knows, or has reason to know of facts which would lead a reasonable person to realize, creates an unreasonable risk of physical harm to himself or another and such risk is substantially greater than that which is necessary to make his conduct negligent. The jury answered "yes" to this question as well and awarded Coleman approximately $500,000 in damages.

The trial court denied Dunagan's motion for a judgment notwithstanding the verdict, but reduced the damages awarded by the jury in response to Dunagan's first motion for new trial.

The court then signed a final judgment in favor of Coleman awarding him $379,802.09 in damages, $20,250.22 in pre-judgment interest, $5,260.68 in court costs, and post-judgment interest. Dunagan's second motion for new trial was denied. This appeal ensued.

## ANALYSIS

In Dunagan's third and fifth issues on appeal, he contends the trial court erred in failing to direct a verdict in his favor and submitting the issues of ordinary negligence and recklessness to the jury. Dunagan argues that the duty of ordinary care does not apply to conduct committed while participating in a sports activity and there is no evidence to support a finding of recklessness. We begin with an examination of the standard of care applicable to Dunagan's conduct.

### Standard of Care in Sports Activities

#### A. Scope of Duty

The existence of a legal duty is a question of law we review de novo. *See Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 460 (Tex. App.—Dallas 2007, pet. denied). Although many Texas appellate courts have addressed the issue of the standard of care for tort liability in sports injury cases, the Texas Supreme Court has yet to opine on the matter. *See Phi Delta Theta Co. v. Moore*, 10 S.W.3d 658 (Tex. 1999) (Enoch, J., joined by Hecht, J., dissenting from denial of petition for review and advocating adoption of inherent risk standard); *Davis v. Greer*, 940 S.W.2d 582 (Tex. 1996). In *Connell v. Payne*, this Court held that a mere showing of negligence was insufficient to allow recovery for an injury occurring as a result of participation in a sports activity. *See Connell v. Payne*, 814 S.W.2d 486, 488 (Tex. App.—Dallas 1991, writ denied). We held that, to prevail, the plaintiff must prove the defendant acted "recklessly" or "intentionally" as those terms are defined by the Restatement of Torts. *Id*. at 489. The rationale supporting this alternative standard is that the ordinary negligence standard of care cannot apply

–4–

without placing an unreasonable burden on free and vigorous participation in sports. *See Moore*, 10 S.W.3d at 660. After *Connell*, many other Texas appellate courts adopted the same "reckless or intentional" standard. *See Monk v. Phillips*, 983 S.W.2d 323, 325 (Tex. App.—Fort Worth 1998, pet. denied); *Moore v. Phi Delta Theta Co.*, 976 S.W.2d 738, 743 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Greer v. Davis*, 921 S.W.2d 325, 327 (Tex. App.—Corpus Christi 1996, writ denied); *Hathaway v. Tacosa Country Club, Inc.*, 846 S.W.2d 614, 617 (Tex. App.—Amarillo 1993, no writ); *Allen v. Donath*, 875 S.W.2d 438, 440 (Tex. App.—Waco 1994, writ denied).

In 2007, the 14th District Court of Appeals in Houston issued its opinion in *Chrismon v. Brown*, 246 S.W.3d 102 (Tex. App.—Houston [14th Dist.] 2007, no pet.) adopting the inherent risk standard suggested in 1999 by Justice Enoch. *See Moore*, 10 S.W.3d 658. The court concluded that the *Connell* standard was overly broad because it appeared to eliminate the duty of ordinary care even as to conduct that created risks not inherent in the sport. *Id*. at 111. The court then set out its own standard stating that, if the risk that resulted in the plaintiff's injury was "inherent in the nature of the sport in which the plaintiff chose to participate," then the participant-defendant owed the plaintiff "no negligence duty." *Id*. If, however, the risk that resulted in plaintiff's injury was not inherent in the nature of the sport in question, then the defendant owed the plaintiff an ordinary "negligence duty." *Id*. at 112. Finally, the court stated that, regardless of whether the risk was inherent in the sport, the defendant owed the plaintiff a duty "not to engage in gross negligence or intentional conduct causing injury." *Id*.

Although *Chrismon* characterizes itself as providing a more narrow scope of protection from liability than *Connell*, it is this standard that Dunagan urges us to adopt. Coleman, on the other hand, argues that we are bound by our earlier decision in *Connell*. In examining the two cases, we conclude the scope of the risks covered and the standards of care set forth in each are

–5–

fundamentally equivalent. Furthermore, we conclude that under either standard, the verdict in this case must be reversed.

*Chrismon* distinguishes itself from *Connell* on the basis that *Connell* appears to eliminate the ordinary negligence standard of care for all conduct by participants in a sports activity regardless of the nature of the conduct. We do not read *Connell* to apply so broadly.

The analysis in *Connell* focuses on the standard of care applicable to sports participants after the abolition of the "assumption of risk" defense in ordinary negligence actions. *See Connell*, 814 S.W.2d at 488. We noted that the risk involved in competing in contact sports led to an historical reluctance of the courts to allow players to recover damages for injuries sustained during participation. *Id*. We further noted that the rationale for abolishing the assumption of risk defense did not apply in express consent cases.[1] *Id*. Although we did not use the term "inherent risks" in setting forth the standard of care, the analysis of the opinion focused solely on the risks "involved in competing" and the need for an alternative standard to be applied to those risks. The rationale supporting the opinion does not apply to risks unassociated with the sport.

The courts that have adopted the *Connell* standard have consistently applied it only to conduct that was an integral part of the sport being played when the injury occurred. One case characterized the occurrence resulting in the injury as a risk "built into" the sport. *See Hathaway*, 846 S.W.2d at 616. Because the *Connell* standard applies only to risks that are "involved in," or "built into" the sport at issue, there is no distinction between *Chrismon* and

---

[1] We recognize that *Connell* appears to extend the express assumption of risk doctrine to mere participation in a sports activity. ("A participant in a competitive contact sport expressly consents to and assumes the risk of dangerous activity by voluntarily participating in the sport.") *Id*. at 488–89. This runs counter to the general rule that express assumptions of risk must be either oral or written. *See Moore*, 10 S.W.3d at 660; *but see Davis*, 940 S.W.2d at 582. Even absent an assumption of risk, every court that has addressed this issue has acknowledged the need for an alternative standard of care for participation in a sports activity because "conduct that would be considered tortious in other contexts is generally accepted, if not encouraged, in athletic competitions and vigorous recreational activities." *See Moore*, 10 S.W.3d at 660.

*Connell* with respect to the scope of conduct and risks covered. For those risks, and those risks only, there is no duty of ordinary care.

Here, the evidence shows that Coleman was injured by a pitch thrown by Dunagan. One of the inherent risks in softball is that a thrown ball will hit and injure a fellow participant. Coleman argues that the fact that Dunagan threw a hard fastball created a risk that was not "inherent" in a game of slow-pitch softball. The force of the throw goes only to whether Dunagan's conduct was reckless or constituted gross negligence, however. It does not change the fact that being struck by a ball thrown by a fellow participant while engaging in the sport of softball is, from an objective standpoint, an inherent risk of the game.

That the incident occurred during a warm-up and not during a game does not change the fact that Dunagan's conduct occurred while he was engaged in playing softball. The inherent risks of a sport do not change depending upon whether the conduct takes place in a practice or in an actual competition. It would be impractical, as well as defeat the purpose of practice, to force participants to conduct themselves differently in training and warm-ups than they would in games. The conduct at issue in *Chrismon* occurred during a training session and not as part of a competition. *See Chrismon*, 246 S.W.3d at 105. *Chrismon* made no distinction between conduct occurring in a practice and conduct occurring in a game and neither do we.

The evidence presented at trial showed that Coleman's injuries were the result of a risk inherent in the sport he was playing. Because Dunagan's conduct was committed as part of his participation in a sports activity and the injury was the result of an inherent risk of that activity, Dunagan could not be held liable for ordinary negligence. The trial court erred, therefore, in failing to direct a verdict in Dunagan's favor on this claim.

**B. Applicable Standard**

Dunagan next argues that, because he was granted summary judgment on Coleman's claim for gross negligence, resolution in his favor of Coleman's claim for ordinary negligence resolves the case because it was Coleman's only remaining claim at trial. Implicitly, Dunagan argues that the issues resolved by the partial summary judgment are final and cannot continue to be litigated, even though the order is interlocutory. *See Trevino & Associates Mech., L.P. v. Frost Nat. Bank*, 400 S.W.3d 139, 144 (Tex. App.—Dallas 2013, no pet.). This assertion is correct, unless the trial court sets aside the summary judgment or it is reversed on appeal. *Id*. A trial court has the inherent right to change or modify any interlocutory order or judgment until the judgment on the merits of the case becomes final. *See H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 877 (Tex. App.—Corpus Christi 1996, writ denied).

Here, Dunagan objected to submission of the reckless conduct issue to the jury for several reasons, including that it was precluded by the trial court's partial summary judgment on gross negligence.[2] The trial court overruled Dunagan's objection. The basis for the trial court's decision is unclear, but we need not address whether submission of the issue was precluded by the earlier summary judgment because we conclude there is no evidence to support its submission.

Although a defendant cannot be held liable for ordinary negligence committed in the course of participating in a sports activity, participants are not immunized from all liability for

---

[2] We note that although *Chrismon* adopts a gross negligence standard rather than a recklessness standard, the opinion discusses the fact that Texas case law has equated the term "gross negligence" with "recklessness." *See Chrismon*, 246 S.W.3d at 107. Gross negligence requires a plaintiff to prove that, "1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Coleman did not seek exemplary damages and neither party asserts the heightened standard of proof of clear and convincing evidence applies. *See* TEX. CIV. PRAC. & REM.CODE § 41.001(11). Indeed, *Chrismon* does not address the applicable standard of proof.

their conduct. *See id.* at 111; *Moore*, 976 S.W.2d at 741–42. To strike this balance, both *Connell* and *Chrismon* set forth a standard of care that permits a defendant to be held liable if his conduct amounts to gross negligence or was reckless or intentional as those terms are defined by the Restatement of Torts. *See Chrismon*, 246 S.W.3d at 112; *Connell*, 814 S.W.2d at 489. Coleman has not alleged and does not contend that his injuries were caused by intentional conduct so we do not consider here the contours of liability based on intentional conduct in sports activities, many of which involve intentional and forceful contact between participants. The jury was asked only whether Dunagan's conduct was reckless.

Dunagan argues that the evidence was legally insufficient to allow submission of the recklessness issue to the jury. Dunagan moved for, and was denied, a directed verdict on the claim and then objected to its submission in the charge. A defendant is entitled to a directed verdict only when reasonable minds could reach but one conclusion under the available evidence. *See Vance v. My Apt. Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 483 (Tex. 1984). Dunagan must show the evidence conclusively proves his right to judgment as a matter of law and there is no evidence sufficient to raise a fact issue to the contrary. *See Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

The jury question on the issue of recklessness tracked the essential language of the Restatement of Torts as required by *Connell*, 814 S.W.2d at 488–89. The jury was instructed that "a person's conduct is in reckless disregard of the safety of himself or another if he does an act or intentionally fails to do an act which it is his duty to do, knowing or having reason to know of facts which would lead a reasonable person to realize, not only that his conduct creates an unreasonable risk of physical harm to himself or another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Accordingly, Coleman was required to provide evidence showing that Dunagan knew or had reason to know that his pitch

created an unreasonable risk of physical harm and that the risk was substantially greater than that which would make his conduct merely negligent.

In support of the jury's finding of recklessness, Coleman points to the following evidence: (1) Dunagan asked Coleman to help him warm up because he had not pitched recently and stated he needed to "find the plate;" (2) Coleman was not wearing protective equipment; (3) an umpire at the scene stated "Hey," immediately following Dunagan's overhand curve ball pitches which Coleman believed indicated Dunagan should stop pitching overhand; (4) Coleman shook his head and the ball at Dunagan to signal him to stop after the umpire's perceived objection; (5) Dunagan did not signal Coleman that he was going to throw a fastball; and (6) the overhand fastball thrown by Dunagan was not the type of pitch used in the softball league in which they were playing. Coleman asserts that the fact that Dunagan stated he needed to "locate the plate" indicated he was concerned about the accuracy of his throws. But inaccuracy is to be expected in every sport. *See Monk*, 983 S.W.2d at 325–26. None of the evidence Coleman points to shows that Dunagan was aware, or should have been aware, of an *unreasonable* risk of harm such that his conduct rose to a level *substantially greater* than mere negligence. We conclude that there was legally insufficient evidence of reckless conduct, so the trial court erred in failing to direct a verdict in favor of Dunagan on Coleman's claim for recklessness.[3] Because of our resolution of Dunagan's third and fifth issues, it is unnecessary for us to address the remaining issues presented.

---

[3] We also conclude the same result would follow an examination of the evidence under the gross negligence standard of care on which the trial court originally granted summary judgment.

We reverse the trial court's judgment and render judgment that Coleman take nothing by his claims.

/David Evans/
DAVID EVANS

121171F.P05                                                      JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ORVILLE PAUL DUNAGAN, Appellant

No. 05-12-00171-CV     V.

BRYAN COLEMAN, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 07-05904-E/G.
Opinion delivered by Justice Evans.
Justices Moseley and FitzGerald participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that BRYAN COLEMAN take nothing by his claims against ORVILLE PAUL DUNAGAN. It is **ORDERED** that appellant ORVILLE PAUL DUNAGAN recover his costs of this appeal from appellee BRYAN COLEMAN. The obligations of the surety or sureties on appellant's supersedeas bond, if any, are **DISCHARGED**.

Judgment entered this 7th day of April, 2014.

/David Evans/
DAVID EVANS
JUSTICE

–12–